## Butcher v. Tate

William Barclay Lex and Joseph P. Flanagan, Jr., for plaintiff.

Abraham L. Freedman and Murray H. Shusterman, for defendant.

CRUMLISH, J., July 21, 1955.—This action arose by complaint in mandamus to compel the president of city council to issue a writ of special election. Plaintiff then moved for summary judgment under Pa. R. C. P. 1098 and a hearing was had thereon. Defendant filed preliminary objections in the nature of a demurrer thus making the matter ripe for adjudication.

This controversy centers around section 2-101 of the Home Rule Charter of the City of Philadelphia which provides as follows: "The Election of Councilmen. At the municipal election held in 1951, and in every fourth year thereafter, one councilman shall be elected from each councilmanic district and seven from the City at large. Each elector shall have the right to vote for one district councilman and for five councilmen-at-large. To this end not more than five candidates for councilmen-at-large shall be nominated pursuant to law by any party or other political body. Should a vacancy occur in the office of any councilman, the President of the Council shall issue a writ of election to the board of elections having jurisdiction over elections in the City for a special election to fill the vacancy for the balance of the unexpired term, which election shall be held on a date specified in the writ, but not less than thirty days after its issuance. The President of Council may fix as the date of the special election, the date of the next primary, municipal or general election."

On January 14, 1955, a vacancy occurred in the office of councilman-at-large when Hon. James A. Finnegan resigned from that position. On the following January 27th and again on February 16th, plaintiff's counsel requested defendant to ". . . issue a writ of election to the City Board of Elections to fill this vacancy". Defendant did not take the requested action and on February 28, 1955, advised plaintiff's counsel that because several councilmen were being considered as candidates for other offices, other councilmanic posts

might become vacant, that, therefore, "good judgment would require the postponement of any positive action in this regard until these questions are determined". Plaintiff conceded that defendant could defer issuance of the special writ of election until such time as the number of vacancies resulting from resignation could be established.

On March 17, 1955, a vacancy occurred in the office of Hon. Victor H. Blanc, councilman-at-large, as a result of his resignation for the purpose of becoming a candidate for the office of district attorney. Plaintiff again demanded that defendant issue a special writ of election to take place on May 17, 1955, primary election day. On March 24th, defendant stated by letter to plaintiff's counsel that he had not been provided "with any compelling reason for burdening both major political parties, and any political bodies, if created, and in fact the electorate of Philadelphia, with additional primary election problems".

Defendant further indicated that he would welcome plaintiff's proposed court action to force him to take such action. Thereafter, plaintiff sought the assistance of the District Attorney of the County of Philadelphia but was refused such assistance. Thereupon, plaintiff sought to invoke the aid of the Attorney General of the Commonwealth of Pennsylvania, but without success. On April 6th, plaintiff filed a complaint in mandamus averring the foregoing facts, and further alleging it to be his belief that defendant's refusal to issue a writ of election as requested was illegal and contrary to the mandatory provisions of the Home Rule Charter of the City of Philadelphia; that as a result of defendant's refusal, plaintiff was being deprived of representation as prescribed by the charter, and of the lawful exercise of his voting franchise thereunder; further that plaintiff was being deprived of the lawful opportunity to be a candidate for council-

man-at-large to fill one of the aforesaid vacancies. The relief sought was: (a) For judgment against defendant; commanding the said Hon. James H. J. Tate, president of the Council of the City of Philadelphia to issue a writ of special election to fill each of the said vacancies recited above: (b) further commanding the said Tate, president, etc., to fix as the date of the special election so to be held the date of the next primary election, to wit, May 17, 1955; (c) that the said writs issue peremptorily upon affidavit and without hearing inasmuch as the time within which the writ may issue naming the said election is April 17, 1955.

Plaintiff filed a motion for summary judgment under Pa. R. C. P. 1098 on the day following the filing of his complaint. Rule 1098 provides: "At any time after the filing of the complaint, the court may enter judgment if the right of the plaintiff thereto is clear, but the judgment may be opened upon cause shown. Judgment shall not be entered without prior notice to all parties unless the exigency of the case is such as to require action before notice, in which event notice shall be given as soon as possible."

On April 11, 1955, the court held a hearing on the motion; on April 12th, defendant filed preliminary objections to the complaint in mandamus setting forth the following reasons:

"1. The complaint fails to set forth a valid cause of action entitling the plaintiff to the relief prayed for.

"2. Plaintiff's conclusion that the defendant must fix May 17, 1955, as the date for a special election to fill existing councilmanic vacancies is an erroneous conclusion of law.

"3. The complaint is otherwise insufficient to justify the relief prayed for."

Time was of the essence in this matter for reason that if plaintiff's position was determined to be sound, the special writ would have to issue by April 16, 1955,

for the May 19, 1955, primary, in order to comply with the charter provision contained in section 2-101, that the election be held not less than 30 days after the issuance of the special writ.

After thorough consideration of the matter before it the court, on April 16, 1955, sustained defendant's preliminary objections and dismissed plaintiff's complaint for reasons hereinafter set forth.

This case hinges on the interpretation of two verbs in section 2-101 of the Home Rule Charter, "shall" and "may", as they are used in the following sentences: "Should a vacancy occur in the office of any councilman, the President of the Council *shall* issue a writ of election . . . to fill the vacancy for the balance of the unexpired term. . . . The President of Council *may* fix as the date of the special election, the date of the next primary, municipal or general election." (Italics supplied.)

Justice Sharswood in 1869, in Bladen v. Philadelphia, 60 Pa. 464, and again in 1873, in Pittsburgh v. Coursin, 74 Pa. 400, expressed the opinion that when words of a statute are affirmative and relate to the manner in which power or jurisdiction vested in a public officer or body is to be exercised, and not to the limits of the power of jurisdiction itself, they have often been construed as directory. This view was followed in Commonwealth ex rel. Fortney v. Wozney, 326 Pa. 494, 497 (1937). Therein the court was more definitive, holding, "the provisions of a statute requiring public officers to act within a specified time are generally regarded as directory, unless time is of the essence of the thing to be done, or the statute indicates that the provision is to be regarded as mandatory". See, also, Betters Appeal, 65 D. & C. 363, 365 (1948), opinion by Sohn, J., for the Common Pleas Court of Beaver County.

A slightly different concept of the proper test to

use when interpreting a statute was expressed by Justice Linn in Commonwealth ex rel. Kelley v. Pommer et al., 330 Pa. 421, 428, 432, 433, 436 (1938). He stated, at page 432: "Construction is necessary only if the expressions used will bear two or more meanings. In applying a statute, it is first necessary to ascertain the meaning of the words used by the legislature; that meaning is matter of fact; having ascertained the meaning, the next step is to determine what the legislature intended should be their legal effect. . . ."

On page 433, Justice Linn called attention to section 13 of the Act of March 21, 1806, 4 Sm. L. 332, 46 PS §156: " 'That in all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this Commonwealth, the directions of the said acts shall be strictly pursued. . . .' " On page 436, he also applied the test " 'that whether a statute is mandatory or not depends on whether the thing directed to be done is of the essence of the thing required' ".

The statute to be construed was the Charter Act for Philadelphia, Act of June 25, 1919, P. L. 581, 53 PS §2901 et seq., particularly four sections of article XVII, P. L. 605, entitled "Finance". From an application of the various rules, the conclusion that the provisions were mandatory was abundantly clear to the court.

The Kelley case, supra, was cited with approval by Mr. Justice Jones in Pa. Railroad Co. v. Bd. of Rev. of Taxes, 372 Pa. 473 (1953). In addition, Justice Jones cited the case of McQuiston's Adoption, 238 Pa. 304, 308 (1913), wherein the court said: "Whenever such question arises it is the legislative intent that determines, and this intent is to be ascertained first of all from the statute itself, and as applied to the subject matter to which it relates."

With the foregoing authorities to guide us, we turn once again to the matter presently before us.

It is our conclusion that the inescapable meaning of the section is that: (1) It is mandatory for the president of city council to issue a writ of election to fill any vacancy that may occur in the office of any councilman, and (2) that the president of city council *may* exercise his discretion in setting the election date, to the extent of choosing one of the following: The next primary, municipal or general election after the vacancy occurs. (We do not mean to indicate that he may select any future election date. His scope of discretion is limited merely to a choice of one of the foregoing, within the time connoted by the statutory word "next".)

In the instant case, the surrounding circumstances create a unique situation. The two councilmanic positions presently vacant are both for terms which expire at the time of the next municipal election in November 1955. Under ordinary circumstances, since the vacancies occurred after the first of the current year, the president of city council would have the duty to determine whether the special election should be held at the time of the spring primary, or in the fall of the year and thereupon issue a writ of election so providing. However, this case presents a departure from the general rule. This situation will resolve itself automatically by the expiration of the terms wherein the vacancies exist, and the selection of new personnel at the fall general election.

In our opinion, the principles of Commonwealth ex rel. Fortney v. Wozney, supra, are applicable to this particular situation. That case involved the interpretation of the Act of May 4, 1927, P. L. 519 which provided, inter alia, that if a vacancy in borough council was not filled by the council within 30 days after the

vacancy happened, then the Court of Quarter Sessions upon proper petition "shall" fill the vacancy. Council proceeded to fill the vacancy but did so more than 30 days after the vacancy had occurred. It was argued that since the vacancy had not been filled within the prescribed time, council was powerless to fill it. The court held at page 497:

"The prime purpose was to fill a vacancy within a reasonable time. The persons to act were not so important as the act itself. . . . The provisions of a statute requiring public officers to act within a specified time are generally regarded as directory, unless time is of the essence of the thing to be done, or the statute indicates that the provision is to be regarded as mandatory."

As we have heretofore pointed out, we interpret the provisions for the issuance of writ of election to be a mandatory one, subject to a limited scope of discretion granted the president of city council. That this discretion was not abused in the instant case becomes crystal-clear when we take into consideration the following factors: (1) The unexpired term of each office sought to be filled at the primary election is but seven months; (2) a period of seven months may or may not be sufficient to indoctrinate the office holder; and, finally, and of major importance, (3) the cost would place an undue financial burden on the taxpayers out of proportion to any benefits to be gained by them.

We now add an obvious exception to the necessity of the issuance of the writ. When the expiration of the councilmanic term coincides with a date the president of council properly selects for election, then the necessity of a writ of election is obviated. It is our considered opinion that the president of city council acted wisely and exercised good judgment in refusing plaintiff's requests for a special election on primary day. He properly interpreted section 2-101 of the Home

Rule Charter as giving him optional dates for the issuance of a writ of special election.

Wherefore, plaintiff's complaint was dismissed, and defendant's preliminary objections sustained.