# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ellis Jones, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| School District of Philadelphia, | : | No. 722 C.D. 2018 |
| Respondent | : | Submitted: March 14, 2019 |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
HONORABLE ANNE E. COVEY, Judge (P.)
HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                              FILED: April 2, 2019

Ellis Jones (Jones) petitions this Court for review of the Secretary of Education's (Secretary) May 1, 2018 order awarding Jones $4,303.00 for lost compensation during 2014 and 2015. Essentially, Jones presents three issues for this Court's review: (1) whether the Secretary properly calculated Jones' compensation; (2) whether the School District of Philadelphia (District) violated Jones' due process rights; and (3) whether the Secretary was required to address additional issues.[1] After review, we vacate and remand.

---

[1] Jones' "Statement of the Questions Involved" includes five issues: (1) whether the Secretary misapplied the law of mitigation of damages; (2) whether unsubstantiated, inadmissible hearsay evidence can be relied upon to prove a fact at issue when it is repeatedly objected to during the hearing and in objections to the testimony of an expert witness who has no first-hand knowledge of any fact at issue; (3) whether the District's counsel's circumvention of the Philadelphia School Reform Commission (SRC) violates the Sunshine Act, 65 Pa.C.S. §§ 701-716, and is the very same malfeasance which this Court admonished the District for so doing; (4) whether the District's counsel's refusal to properly reinstate Jones through the SRC and refusal to properly assign Jones to a teaching position, and thereafter unilaterally declaring that he had abandoned his job without any knowledge, authority or action of the SRC is yet another due process violation; and (5) whether the Secretary failed to act to reinstate Jones as directed to do so by this Court pursuant to the Court's Order and as asked to do so in Jones' application to enforce the executory orders of both this Court and the Secretary. Jones' Br. at 4. These issues are subsumed in this Court's rephrasing of the issues and will be addressed accordingly.

## Background

The District hired Jones as a teacher and professional employee on September 1, 2002. Jones was a vocational teacher at Dobbins Area Vocational Technical School (AVTS) for six years until the electronics program was discontinued at that location. During the 2008-2009 school year, Jones was assigned as a math teacher at Mastbaum AVTS (Mastbaum). On or about April 30, 2009, Mastbaum's principal Mary Dean (Dean) received a letter containing alleged inappropriate statements Jones made in his classroom while teaching. Thereafter, an investigation commenced regarding the alleged statements. After an investigatory conference on June 1, 2009, Dean prepared an unsatisfactory incident report and recommended that Jones' employment be terminated. In August 2009, the District's Administration recommended that Jones' employment be terminated.

Jones requested a hearing before the District's School Reform Commission (SRC) and on April 16, 2010, a hearing was held before the SRC. Effective December 15, 2010, the SRC terminated Jones' employment. Jones challenged his employment termination by pursuing litigation against the District before the Secretary and this Court. On June 2, 2016, this Court concluded that the District failed to comply with the mandatory provisions of the Public School Code of 1949 (School Code),[2] and thus held that Jones' employment termination was a nullity. *See Sch. Dist. of Phila. v. Jones*, 139 A.3d 358 (Pa. Cmwlth. 2016) (*Jones I*). The Court ordered Jones be reinstated with backpay. *Id.*

## Facts

On August 25, 2016, the Secretary entered the following order:

Pursuant to the Opinion and Order of the Commonwealth Court in the above captioned matter [] Jones shall be

---

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702.

reinstated effective June 2, 2016. The parties are hereby ordered to file with my office a Stipulation regarding the amount of compensation that is due to [] Jones, no later than November 1, 2016, taking into account the duty to mitigate damages. If the parties cannot enter into a Stipulation regarding the amount of compensation that is due to [] Jones, the parties shall file a Legal Memorandum and Proposed Order with my office stating their respective positions on the issue of due compensation, no later than November 1, 2016. The Legal Memorandum shall include appropriate legal and factual support.

Reproduced Record (R.R.) at 42A.[3] On November 1, 2016, the District sent Jones'

Counsel an email stating:

> This is to confirm the matters . . . just discussed with you on the phone. The [] District is willing to offer reinstatement to [] Jones . . . and is retaining its rights to move forward with discipline . . . , including, but not limited to, a recommendation of termination to the SRC. Please advise **by the end of business on November 2, 2016,** whether Jones . . . [is] willing to accept reinstatement with **a start date of November 4, 2016.**

R.R. at 82A (emphasis in original). On December 2, 2016, a follow-up letter was

emailed to Jones' Counsel relating:

> On the telephone this afternoon, we discussed the [O]rder issued by the Commonwealth Court in this case. You mentioned that, in fact, you read the [O]rder earlier today. The [O]rder states that your client [is] 'hereby reinstated to [his] position[] as a professional employee . . . .' You advised it is your position that in order for the [] District to comply with the [O]rder, the SRC must reinstate your client at a public meeting in order to comply with the Sunshine Act.[4] You also advised that despite the language in the [O]rder it is your opinion that at present your client has not

---

[3] The District had requested the Secretary to vacate the August 25, 2016 order because the District petitioned the Pennsylvania Supreme Court for allowance of appeal and that entitles the District to an automatic stay. The Secretary did not address the request. On February 15, 2017, the Pennsylvania Supreme Court denied the District's Petition for Allowance of Appeal. *See Sch. Dist. of Phila. v. Jones*, 167 A.3d 697 (Pa. 2017).

[4] 65 Pa.C.S. §§ 701-716.

3

been reinstated to his position as a professional employee. Despite your position that the [O]rder violates the law by ordering reinstatement without compliance with the Sunshine Act, your client did not file a notice of appeal from the Court's [O]rder. As you know, the time to appeal is now closed.

In your client's petition[] for review to the Commonwealth Court, he requested, in pertinent part, 'an Order of the Court reinstating him to his position as a teacher . . . .' In light of your client's request and the Court's [O]rder, your client received the relief he sought. As the [O]rder states, your client has been reinstated on the date specified in the [O]rder. The only outstanding issue is the matter of back pay, and as you know, that is currently being resolved by the Secretary.

**We are again writing to your client to advise that he may report to work.** As we have previously requested numerous times, please provide us with your client's email address so that the appropriate District staff persons may contact your client to discuss logistics. **Please be advised that if we do not receive your client's email address by the close of business on <u>Wednesday, December 7, 2016,</u> the District will consider your client to have abandoned his position in the [] District.**

The [] District expressly retains all and does not waive any of its rights, claims, defenses and the like. In particular, the [] District expressly retains and does not waive its claims that your client failed to mitigate his damages in whole or part.

R.R. at 83A-84A (bold and underline emphasis in original).

In December 2016, the parties requested the Secretary to hold hearings on the damages issue. Those hearings commenced on January 24, 2017, and continued over the course of several days throughout 2017. On May 1, 2018, the Secretary ordered:

Jones shall be entitled to $4,303[.00] as a total gross amount for lost compensation during 2014 and 2015. [] Jones also shall be entitled to payment for any leave that he would have earned during those two years if he remained

4

employed with the [District]. The District shall have the right to make deductions for applicable retirement contributions and other payroll deductions in accordance with legal and/or contractual requirements.

Secretary's Dec. at 14. Jones appealed to this Court.[5]

## Discussion

## Compensation

## Mitigation

Jones first argues that he is entitled to all lost compensation he should have earned had he not been dismissed, less what he actually earned during the relevant time period. The District rejoins that because Jones had a teaching job for only two of the relevant years, he failed to mitigate his damages. Therefore, the District maintains, they are the only years he is entitled to compensation.

In *Jones I*, this Court explained:

With respect to Jones' damages, the law is well established that '[a] school teacher is not a public officer, but is an employe[e] of the school district, and the ordinary rules relating to damages for breach of contract of employment apply.' *Coble v. Sch. Dist. of Metal Twp.*, . . . 116 A.2d 113, 115 ([Pa. Super.] 1955) (citation omitted). 'Where a teacher is wrongfully discharged, he is to be compensated for loss of salary during such period, but there is no requirement that the school district pay the compensation provided in the contract regardless of set-off or the amount of damages the employe[e] has suffered.' *Id.*

[W]e find no apparent reason why the ordinary rules relating to damages for breach of contract of employment should not be applied. As stated in 47 Am. Jur., Schools, § 145, p. 402: . . . [I]n an action for

---

[5] "This Court's standard of review of a decision of the Secretary of Education is limited to [the] determination of whether substantial evidence supports necessary factual findings, and whether an error of law or constitutional violation was committed." *Curl v. Solanco Sch. Dist.*, 936 A.2d 183, 185 n.1 (Pa. Cmwlth. 2007).

> breach of contract by one employed as a teacher, the measure of damages is the wages which were to be paid, less any sum actually earned, or which might have been earned, by the [teacher] by the exercise of reasonable diligence in seeking other similar employment.
>
> *Id.* at 116. More recently this Court held in *Merrell v. Chartiers Valley School District*, 51 A.3d 286 (Pa. Cmwlth. 2012):
>
> > A plaintiff has a duty to mitigate damages. *Circle Bolt & Nut Co. v. Pa. Human Relations Comm'n*, 954 A.2d 1265 (Pa. Cmwlth. 2008). **The duty to mitigate damages, however, 'is not onerous and does not require success.'** *Id.* at 1270. **All that is required to mitigate damages is to make 'an honest, good-faith effort.'** *Id.* at 1271. The employer has the burden of proving that substantially comparable work was available and that the plaintiff failed to exercise reasonable due diligence in seeking alternative employment. The substantially comparable or equivalent work refers to employment which affords virtually identical opportunities for a promotion, compensation and responsibilities. **Whether the plaintiff properly mitigated damages is a factual determination to be made by the fact-finder.**
>
> *Merrell,* 51 A.3d at 298 (citations omitted).

*Jones I*, 139 A.3d at 376-77 (emphasis added; footnote omitted).

Here, the Secretary found as a fact: "The record contains **no credible evidence** to support a conclusion **that** [**Jones**] **made any effort** to find employment similar to his employment with the District at any relevant time until he obtained employment with the Delaware County Intermediate Unit ('DCIU') in 2014." Secretary Dec. at 3, Finding of Fact 12 (emphasis added).

However, Jones testified that beginning in October 2009, he worked in the Springfield, Delaware County School District, as a substitute teacher. *See* R.R. at 405A, 409A. Jones further reported that in the beginning of 2010 he filed an

6

application with the Pennsylvania Regional Educational Applicant Placement (PA REAP)[6] network, making his credentials available to all school districts in Southeastern Pennsylvania that may need to fill a vacancy. *See* R.R. at 406A-407A. As a result of his employment search, Jones obtained a position at MAST Charter School during the 2010-2011 school year, *see* R.R. at 380A, 410A, and Pottstown High School as an evening program teacher. *See* R.R. at 410A-411A. Moreover, Jones explained that from August 2011 through December 2012 he worked at Hope Charter School, *see* R.R. at 412A-413A, from January 2013 to January 2014 he worked at Upper Darby High School, *see* R.R. at 414A-416A, and thereafter, he obtained a position as a tenured teacher at DCIU. In addition, Jones testified that he registered with Kaleidoscope.[7] According to Jones, Kaleidoscope "puts candidates in many schools in the area. [sic] [He] signed up with Kaleidoscope, and they sent [him] on job interviews at some of the institutions they put people[,] [sic] to see if they would accept [him]. [sic]" R.R. at 385A. Jones also noted that he persistently sought to improve his position in the education field by attending graduate school and earning additional certifications. The record evidence clearly reveals that as a result of Jones' employment search, he was continuously employed throughout the period of his dismissal, except for two short periods of unemployment. Thus, Finding of Fact 12 is not supported by substantial evidence.

Importantly, the District has the burden to prove that substantially comparable work was available and that the plaintiff "failed to exercise reasonable

---

[6] PA REAP is a national school application network which "is a free service designed to help educators find new and exciting teaching jobs, administrative jobs and other related service positions in Pennsylvania." https://www.pareap.net (last visited March 15, 2019). Through PA REAP, one can find employment opportunities from 950 school districts and private schools nationwide. *See id.*

[7] "Kaleidoscope Education Solutions is a leading referral agency of special education professionals and school-based therapy providers." https://www.kesgroup.net (last visited March 15, 2019).

7

due diligence in seeking alternative employment." *Id.* The District presented vocational expert Terry P. Leslie (Leslie) who testified that the Commonwealth of Pennsylvania had teaching positions available to Jones after his dismissal which were suitable to his education, experience, and qualifications. *See* R.R. at 458A.

Specifically, Leslie related that he "asked that data be collected that outlines all of the positions that have been advertised in the [C]ommonwealth of Pennsylvania for math and special education teachers since 2009 to the present[.]" R.R. at 460A. As a result, he "received . . . individual lined employment openings put together in a list[ ] [(Summary)] then received copies of the employment advertisements for those individual openings [(Advertisements)]." R.R. at 462A, School District Ex. (SDE) 1-2.

The Summary was a more than 900-page list of job postings for "special education teachers and high school math teachers in the state of Pennsylvania." SDE 1 at 1. It included jobs throughout Pennsylvania in such locations as Pittsburgh, Lancaster, York, Fairview, Lebanon, Scranton, Bedford, Mechanicsburg, Stroudsburg, Huntingdon, Newville, Jim Thorpe and Erie, among other places, which are a great distance from the Philadelphia area. The Summary also listed postings on CraigsList and Internships. Importantly, none of the job postings stated the salary for the particular position. Moreover, the Summary included hundreds of positions not geographically relevant as Jones was not required to relocate to obtain employment in order to mitigate back pay damages. *See Somerset Area Sch. Dist. v. Starenchak*, 599 A.2d 252 (Pa. Cmwlth. 1991). It also listed positions irrelevant to Jones' job search because they were not substantially comparable, such as substitute teachers, research associates, volunteer teachers and assessment editors.

The Advertisements contained the "details" for the positions listed in the Summary and consisted of over 21,000 pages. *See* R.R. at 463A-464A, SDE 2. The "details", however, varied between one to two sentences and full paragraphs, most of

which were so vague, it could not be determined whether the positions were indeed comparable.  *See* SDE 2.  Significantly*,* most of the Advertisements did not contain salaries.  *See id.*

Finally, Leslie discussed a list of job openings for math and special education teachers that were filled from 2009 to present throughout Pennsylvania, which were obtained pursuant to a Right-to-Know Law (RTKL)[8] request (Request).  *See* R.R. at 467A.  Specifically, the Request sought from August 11, 2009 to August 2017: (1) "[a]ny and all job postings <u>and</u> vacancies for teacher positions in the following areas of certification[]"  instructional I and II social studies, mathematics, technology education, special education, vocational instructional II vocational instruction, related occupational area automotive mechanics, cooperative education and engineering related technology; and (2) "[a] copy of all resumes for teachers hired" in the above-listed certifications.  SDE 3 at 3.  The Request garnered approximately 1,300 pages of tables and charts from various schools and school districts containing information on all available positions, including, *inter alia*, school nurses, sports coaches, music coordinators, art coordinators, health and physical education teachers, counselors, long-term substitute teachers, substitute van drivers, and administrative positions.  The responses further included, among other things, lists of new hires, rehires, and classification changes.

> Leslie opined:
>
> Q Okay.  And based on your review of all the documents that you reviewed, did you form an opinion as to whether [] Jones could have obtained a teaching position after his termination by the [] [D]istrict?
>
> A Yes.  It's clear that school districts have been hiring for teachers certified in those areas on a consistent basis.

---

[8] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

Q **And in this case, it's not really a question as to whether he's obtained any teaching position, because he did -- he did obtain some; right**?

A **Correct**.

Q **So, what is it that you were determining**?

A Right. **It's not so much a question of whether or not there were positions open and available, because, obviously [] Jones has been gainfully employed since the date of his termination**.

My focus was more on the earnings of the individuals with those teaching certifications on a statewide level. So, what I did then is, go through the -- statistics are put together by economists that are hired through or employees of either the Pennsylvania Department of Labor and Industry or the [United States] Bureau of Labor Statistics, and then compile data for those teaching positions on an annual basis from 2009 to the present.

Q So, you were essentially determining what he could have or should have been making?

A **What the average experienced teacher in those disciplines earned on a [C]ommonwealth basis**.

R.R. at 468A-469A (emphasis added). Leslie further opined:

Q Do you provide any opinion in your report as to what his earning capacity -- what [] Jones'[] earning capacity was during the period of 2009 to the present?

A Right. Again, I was tasked at taking a look at the [C]ommonwealth of Pennsylvania as a whole. And the earning capacity for teachers with his qualifications range from 76,900 dollars in 2009 --

. . . .

As I was saying, it ranged from 63,900 dollars in 2009 to 74,477 dollars in 2016.

R.R. at 476A-477A.

Significantly, the salary figures Leslie cited were computed from a set of statistics completely independent from the information he obtained through the Summary, Advertisements and Request, and, as he stated, were "look[ing] at the Commonwealth of Pennsylvania as a whole[,]" not related to specific, available positions in Jones' geographic location. R.R. at 476A. Thus, notwithstanding the data testified to, Leslie's opinion with respect to what Jones should have earned is based on nothing more than the Pennsylvania Department of Labor and Industry's Occupational Employment and Wage Rates, and the United States Department of Labor's Bureau of Labor Statistics' State Occupational Employment and Wage estimates. *See* SDE 4 at 6. More importantly, comparing these salary figures, *i.e.*, $63,900.00 in 2009 to $74,477.00 in 2016, with Jones' actual earnings, *i.e.*, $57,788.00 in 2009 to $85,640.00 in 2016,[9] the compensations are substantially similar, such that it does not support the conclusion that Jones did not mitigate his damages. This statement is especially true here, where the salaries obtained from the Request for high school math teachers and special education teachers ranged from $42,000.00 to $66,719.00, for the relevant time period.[10] *See* SDE 3.

Based on Leslie's testimony and report, the Secretary concluded: "(1) [Jones] did not exercise reasonable due diligence in obtaining available employment prior to the time he was employed at DCIU, and (2) [Jones] could have reasonably expected to earn more money than he actually earned if he pursued similar employment with reasonable diligence." Secretary's Dec. at 11. For the reasons stated above, the Secretary's conclusions are not supported by the record evidence.

> 'The general rule is that the burden of proof rests with the defendant to show that the plaintiff could have minimized his damages **by using the ordinary care of a reasonable**

---

[9] *See* Secretary's Dec. at 5.

[10] With the exception of one special education position having a salary of $73,883.00 for the relevant time period.

11

**and prudent person**.' *APCL & K, Inc. v. Richer [Commc'ns], Inc.,* . . . 361 A.2d 762, 766 ([Pa. Super.] 1976). *See also*: *Williams v. [Nat'l] Org[.], Masters, Mates & Pilots of Am*[.], . . . 120 A.2d 896, 901 ([Pa.] 1956); *State Pub*[.] *Sch*[.] *Build*[g.] *Auth*[.] *v. W.M. Anderson Co.,* . . . 410 A.2d 1329, 1331 ([Pa. Cmwlth.] 1980).

*Princess Hotels Int'l v. Hamilton*, 473 A.2d 1064, 1067 (Pa. Super. 1984) (emphasis added). Jones' evidence showed that even though Jones' dismissal had occurred in August 2009, Jones had continuously worked since October 2009. Because Leslie testified to an average earning wage from teachers across Pennsylvania with his qualifications during that period, the Secretary resolved this issue in favor of the District. "Where, as here, the [Secretary's] findings are [not] supported by the evidence, they are [not] binding upon an appellate court." *Princess Hotels Int'l*, 473 A.2d at 1067 (quoting *Burke v. Israel*, 399 A.2d 779, 782 (Pa. Super. 1979)).

This Court specifically instructed the District: "The employer has the burden of proving that substantially comparable work was available and that the plaintiff failed to exercise reasonable due diligence in seeking alternative employment. The substantially comparable or equivalent work refers to employment which affords virtually **identical opportunities** for a promotion, **compensation** and **responsibilities**." *Jones I*, 139 A.3d at 376 (emphasis added) (quoting *Merrell*, 51 A.3d at 298). By having an expert obtain pages of information with respect to employment opportunities, including, in large part, opportunites that were clearly outside Jones' geographic location and/or not substantially comparable work, *see* SDE 1-3, and then basing the purported comparable salary on statistics completely unrelated and independent of the available employment opportunities compilation, *see* SDE 4, the Court is constrained to conclude that the District failed to satisfy its burden of proof.

"Bearing in mind the general rule that the burden of proof rests with the defendant to show that the plaintiff could have minimized his or her damages," *Starenchak*, 599 A.2d at 254, this Court cannot agree that the District met its burden of proving "that substantially comparable work was available and that [Jones] failed to exercise reasonable due diligence in seeking alternative employment."[11] *Jones I*, 139 A.3d at 376 (quoting *Merrell*, 51 A.3d at 298). "Even assuming that [Jones] did not take necessary steps to obtain employment, the [District] has not met its burden of proof." *Delliponti v. Deangelis*, 681 A.2d 1261, 1265 (Pa. 1996). The District failed to present evidence to establish that there were available teaching positions substantially equivalent to the position Jones previously held with the District, *see Raya and Haig Hair Salon v. Pa. Human Relations Comm'n*, 915 A.2d 728, 735 (Pa. Cmwlth. 2007), "which afford[] virtually **identical opportunities for** . . . **compensation** . . . ." *Jones I*, 139 A.3d at 376 (emphasis added) (quoting *Merrell*, 51 A.3d at 298).

The fact that the District compiled 900 to 21,000 pages of random job ads, without correlating salaries, does not prove that Jones failed to use "the ordinary care of a reasonable and prudent person" in seeking alternative employment. *Princess Hotels Int'l*, 473 A.2d at 1067 (quoting *APCL & K, Inc.*, 361 A.2d at 766). Accordingly, because the record evidence reveals that the District did not satisfy its burden, Jones is entitled to the compensation he would have earned had he not been dismissed, less any earnings he actually received during the relevant time period.

---

[11] Jones also argues that Leslie's report was inadmissible hearsay because it was based on the Summary, the Advertisements and the Request which were all hearsay and/or obtained for litigation. Because this Court concludes that the District did not meet its burden, the Court does not reach this issue.

**Calculation**

Jones claims that the calculation of what he should have earned had he not been dismissed must be based on a combination of the doctorate salary schedule (because he obtained his doctorate in May 2017),[12] and the senior career teacher salary. Jones further contends that he is entitled to compensation through June 2017, when he retired. The District responds that Jones is entitled to the master's degree salary schedule because that is the only degree Jones had during the relevant period. Further, the District asserts that Jones should only be compensated through his reinstatement date.

> The Secretary explained:
>
> [Jones] argues that he would have been compensated at the level of those who possessed a doctorate degree. [Jones] claims that he would have been paid on the 'doctorate' scale during the 2010-2011 and 2011-2012 school years. I disagree. [**Jones**] **did not have a doctorate degree at any relevant time**. In my view, the . . . amounts correctly reflect a salary at the level of the only graduate degree [Jones] did hold from 2009 through 2016 (i.e., master's degree +30, Step 11). [Jones'] proper pay grade is correctly listed . . . .
>
> Even if [Jones'] testimony regarding his graduate degrees is assumed to be true, he did not obtain a doctorate degree until 2017. He testified that he received a doctorate degree from Gwynedd Mercy University in May 2017. . . . **There is no evidence in the record to support a conclusion that [Jones] was entitled to payment on the District's 'doctorate' scale prior to 2017**. In my opinion, 2017 is outside the proper timeframe for the calculation of damages in this matter. To the contrary, [Jones] contends that he is entitled to a damage award for lost compensation through 2017 and invites me to conclude that the District never validly reinstated him. . . . [Jones] argues that the District's

---

[12] At the May 9, 2017 hearing, Jones testified that he was graduating May 13, 2017, so he would have his doctorate at that time. *See* R.R. at 282A-283A.

14

offer to return him to work was invalid because it was not made at a public meeting. . . .[13]  Again, I disagree.

. . . . **[T]he District has offered [Jones] reinstatement, and [Jones] has refused it.  Therefore, the correct timeframe for the calculation of damages ends on November 9, 2016**[14] **- the day on which the District first offered [Jones] reinstatement**.  The District has offered to return [Jones] to his position several times.  [Jones] has chosen not to return to work. . . .  I cannot reward [Jones] for refusing to accept reinstatement.  Accordingly, I find that the relevant timeframe for the calculation of damages must end on November 9, 2016, when the District first offered [Jones] his job back.  His wages must be calculated at the master's degree pay level commensurate with the only graduate degree he held during the relevant timeframe (2009-2016).

[Jones] also claims that he is entitled to additional pay as a senior career teacher. . . .  I find no support in the record for this claim.  **The evidence does not support a conclusion that [Jones] would ever have held senior career teacher status with the District**.  The prerequisites for senior career teacher status are as follows: 'Possession of a Vocational II certificate issued by [the Pennsylvania Department of Education]; and ten (10) years of satisfactory teaching in the [District]; and forty[-]five (45) approved college credits.'  Ex. EJ-16.  **It is undisputed that the 2009 issuance of an unsatisfactory incident report regarding [Jones] would have prevented him from being considered as having satisfied the requirement of ten years of satisfactory teaching**. . . .  **It is further undisputed that [Jones] did not obtain his 45th credit until after the Fall Semester of 2014**. . . .  Even if he did, there is no evidence to support a conclusion that he would have been able to obtain 45 credits by that time if he was working full-time for the District.  It is undisputed that, after [his employment] termination [Jones] had a reduced work load at his non-District jobs.  Accordingly, I find that [Jones] would not have been paid as a senior career teacher or at the 'doctorate' pay level at any relevant time.

_____

[13] This argument will be further addressed below.

[14] According to the record, November 4, 2016, is the date the District first offered reinstatement.  *See* R.R. at 82A.

15

Secretary's Dec. at 6-7 (emphasis added; footnote omitted). This Court discerns no error in the Secretary's analysis. Moreover, other than perfunctory statements in footnotes in his brief, *see* Jones' Br. at 58 n.21-23, Jones does not offer any argument on which this Court can conclude otherwise. Accordingly, the compensation Jones would have earned if he had not been dismissed was correctly calculated at the master's degree salary schedule and properly ended on November 4, 2016.[15]

> Jones further argues:
>
> The Secretary did not . . . interpret Jones' [Philadelphia Federation of Teachers] Collective Bargaining Agreement properly. Nor did the Secretary calculate the statutory interest rate of 6% per year. He also did not properly assess [Public School Employees' Retirement System] contributions properly [sic]. And he did not order reimbursement of [] Jones' transcript fees as mandated by Section []1127 of the tenure provisions of the School Code[, 24 P.S. § 11-1127].
>
> In Jones' memorandum on compensation due, he presented a detailed analysis. We therefore incorporate it herein by reference.

Jones' Br. at 56. Rather than developing a coherent argument with respect to each of these claims, with proper citation to relevant case law supporting his argument as required by the Pennsylvania Rules of Appellate Procedure, Jones simply attempts to incorporate by reference the memorandum he submitted to the Secretary below.

> [The Pennsylvania Supreme Court] ha[s] previously held that such 'incorporation by reference' is an unacceptable manner of appellate advocacy for the proper presentation of a claim for relief to our Court. *Commonwealth v. Edmiston*, . . . 634 A.2d 1078, 1092 n.3 ([Pa.] 1993) (specifying that all claims a litigant desires our court to consider are required to be set forth in the appellate brief and not just

---

[15] Jones also asserts that the 6% interest should be compounded. However, as Jones correctly notes in his unsupported request "for a remedial order" from this Court: "The type of interest, whether simple or compound, is discretionary. *Graybill v. Juniata [Cty.] Sch[.] Dist.*, 347 A.2d 524 (Pa. Cmwlth. 1975)." Jones' Br. at 27.

incorporated by reference); *Pines v. Farrell, . . .* 848 A.2d 94, 97 n.3 ([Pa.] 2004) (holding that reliance on the 'briefs and pleadings already filed in this case' was 'not a recommended form of advocacy' and noting that 'this Court is not obliged to root through the record and determine what arguments, if any, respondent forwarded below, nor are we obliged to fashion an argument on his behalf.'). Our rules of appellate procedure specifically require a party to set forth in his or her brief, in relation to the points of his argument or arguments, 'discussion and citation of authorities as are deemed pertinent,' as well as citations to statutes and opinions of appellate courts and 'the principle for which they are cited.' Pa.R.A.P. 2119(a), (b). Therefore[,] our appellate rules do not allow incorporation by reference of arguments contained in briefs filed with other tribunals . . . as a substitute for the proper presentation of arguments in the body of the appellate brief.

*Commonwealth v. Briggs*, 12 A.3d 291, 342-43 (Pa. 2011). Consequently, Jones has waived these arguments. *Id.*

## Due Process

### The Sunshine Act

Jones argues that the District failed to comply with the Secretary's August 25, 2016 order directing that Jones be reinstated. Jones contends that because the District did not pursue Jones' reinstatement through the SRC and the SRC did not reinstate him, the District violated the Sunshine Act. Jones expressly relies on Section 708 of the Sunshine Act. Section 708(a) of the Sunshine Act provides, in relevant part:

> An agency may hold an executive session for one or more of the following reasons:
>
> (1)    To discuss any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of performance, promotion or disciplining of any specific prospective public officer or employee or current public officer or

17

employee employed or appointed by the agency, or former public officer or employee, provided, however, that the individual employees or appointees whose rights could be adversely affected may request, in writing, that the matter or matters be discussed at an open meeting.

65 Pa.C.S. § 708(a). Section 708(c) of the Sunshine Act mandates that "[o]fficial action on discussions held pursuant to subsection (a) shall be taken at an open meeting." 65 Pa.C.S. § 708(c).

The District rejoins that this Court ordered Jones to be reinstated, thus the Sunshine Act does not control. This Court's Order expressly directed: "[T]he Acting Secretary of Education's November 5, 2013 order is REVERSED. [] Jones is hereby reinstated to his position as a professional employee of the [District] and the matter is REMANDED to the [Secretary] for further proceedings consistent with this Opinion." *Jones I*, 139 A.3d at 377.

The Sunshine Act defines an official action as:

(1) **Recommendations made by an agency** pursuant to statute, ordinance or executive order.

(2) **The establishment of policy** by an agency.

(3) **The decisions on agency business** made by an agency.

(4) **The vote taken by any agency** on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

65 Pa.C.S § 703 (emphasis added). Here, because this Court ordered Jones' reinstatement, the SRC was not required to recommend, establish, decide or vote on anything. Accordingly, since no official action was necessary, the Sunshine Act does not apply.

18

**Reinstatement Letters**

Jones asserts that the District's letters offering Jones' reinstatement were illegal and thus void. Consequently, Jones maintains he was not reinstated. This Court disagrees.

On June 2, 2016, this Court ordered Jones' reinstatement. In accordance with this Court's Order, on August 25, 2016, the Secretary ordered Jones reinstated effective June 2, 2016. This Court recognizes that the District requested that the Secretary vacate his order based on its petitioning the Pennsylvania Supreme Court for allowance of appeal. However, when the Secretary did not address the request, the District in fact, sent a letter to Jones offering reinstatement "with a start date of November 4, 2016." R.R. at 82A. Jones responded by stating his position that the SRC had to reinstate him at a public meeting and that Jones could not be reinstated with pending disciplinary action. The District responded on December 1, 2016, explaining that SRC action was not required, that the District had the right to proceed with disciplinary action and requested Jones to report to work. *See* R.R. at 83A-84A.

This Court agrees with the District. As explained above, SRC action was not required because this Court ordered Jones to be reinstated. Moreover, the District was free to proceed with disciplinary action as this Court specifically concluded: "**Jones is reinstated to his position as a professional employee until the District properly terminates his employment in accordance with the School Code** . . . ." *Jones I*, 139 A.3d at 376 (emphasis in original). Accordingly, Jones' reinstatement was valid.[16]

---

[16] Jones further claims that his reinstatement without SRC action is analogous to his employment termination without SRC action, which this Court found to be a violation of Jones' due process rights. However, the cure for said violation is not reinstatement through the SRC, but rather, reinstatement followed by employment termination proceedings as prescribed by the School Code.

## Additional Issues

### Application to Enforce

Jones argues that he submitted an application to enforce the Secretary's order reinstating him, and notwithstanding the Hearing Officer's scheduling order (Scheduling Order) stating otherwise, the Secretary did not address it. The Scheduling Order stated, in relevant part:

> At the hearing, the following issues/matters shall be considered:
>
> a. The [District's] request for a stay or supersedeas pending review by the [Secretary].
>
> b. [Jones'] request for enforcement of [the Secretary's] orders reinstating [Jones] to his position with the [District].
>
> c. The amount of back pay, if any, that should be awarded to [Jones], taking into account his duty to mitigate damages.

R.R. at 144A. Jones claims the Secretary did not address issues a and b.

First, the Secretary's decision was dated May 1, 2018, and the Pennsylvania Supreme Court denied the District's Petition for Allowance of Appeal on February 15, 2017. Therefore, the issue of the District's request for a stay or supersedeas was clearly moot on the date the Secretary issued his opinion. Second, the Secretary concluded that the District reinstated Jones as of its first offer of reinstatement. Consequently, the issue of enforcement of the Secretary's reinstatement order was also moot at the time the Secretary issued his decision. Accordingly, the Secretary addressed the issues properly before him, *i.e.*, the amount of backpay and mitigation.

### Liberty Interests and Records Expunction

Jones states in his brief: "Jones asked the Secretary to order the expunction of all records and his Hearing Officer never addressed the issue. We ask

this Court to do so now." Jones' Br. at 53. Jones further argues: "The District provides a 'do not hire' list to Kelly Services. If Jones' name is placed on that list it would create a 'stigma' which would create a cause of action against the District." *Id.*

Pennsylvania Rule of Appellate Procedure 1551(a) provides in pertinent part: "Review of quasijudicial orders shall be conducted by the court on the record made before the government unit. No question shall be heard or considered by the court which was not raised before the government unit . . . ." Pa.R.A.P. 1551(a). This Court remanded this matter in *Jones I* for Jones' reinstatement and calculation of damages. The Hearing Officer specified the issues to be determined in its Scheduling Order (the District's stay request, Jones' Enforcement Application and damages/mitigation). As Jones' record expunction was not before the Secretary, it was properly not heard or considered by the Secretary. Consequently, it cannot now be considered by this Court.

This Court notes that although it reversed Jones' employment termination because the District failed to comply with the School Code, it did not address the actual charges. Moreover, if Jones had accepted the reinstatement, the original charges could again be reinstituted and disciplinary proceedings could be brought against Jones correspondingly. Accordingly, the Secretary did not err in not addressing Jones' records expunction and we will not do so now.

**Conclusion**

For all of the above reasons, the Secretary's order is vacated, and the matter is remanded to the Secretary to recalculate Jones' damages by including what he should have received under the masters salary schedule for the time period beginning with Jones' dismissal and ending on the date he was first offered

21

reinstatement, including all accumulated leave, less all income actually earned throughout that time period, plus 6% interest.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ellis Jones,               :

        Petitioner       :

                       :

         v.             :

                       :

School District of Philadelphia,   :   No. 722 C.D. 2018

        Respondent    :

## O R D E R

AND NOW, this 2ⁿᵈ day of April, 2019, the Secretary of Education's (Secretary) May 1, 2018 order is vacated, and the matter is remanded to the Secretary to recalculate Ellis Jones' damages in accordance with this opinion.

Jurisdiction relinquished.

_____

ANNE E. COVEY, Judge