# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles J. Walsh, III and
Laura Blau and Philadelphia
Community Development
Coalition

    v.

Teresa F. Isabella and
325 S. 18th Street, LLC

Appeal of: 325 S. 18th Street, LLC

:
:
:
:
:
:
:
:
:
:
:
:
:

Nos. 1689 & 1781 C.D. 2019
Submitted: October 23, 2020

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge[1]
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                          **FILED: June 23, 2021**

In these consolidated matters, Appellant 325 S. 18th Street, LLC (Appellant) appeals from two orders of the Court of Common Pleas of Philadelphia County (trial court).[2] The orders arise out of a proceeding under the Abandoned and Blighted Property Conservatorship Act,[3] commonly known as Act 135 (Act or Act 135), relating to the property known as 325 S. 18th Street in Philadelphia, Pennsylvania

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

[2] This Court consolidated the matters by order dated March 3, 2020.

[3] Act of November 26, 2008, P.L. 1672, *as amended*, 68 P.S. §§ 1101-1111.

(Property). The orders, dated October 21, 2019, and December 9, 2019, denied Appellant's third and fourth motions, respectively, to terminate the conservatorship of the Property held by the Philadelphia Community Development Coalition (the Coalition).[4] We affirm.

A detailed recitation of the facts and lengthy procedural history underlying this matter is unnecessary to our disposition; thus, we provide the following brief summary of the background most pertinent to the issues raised herein. On June 3, 2016, the Coalition and two individuals, Charles J. Walsh, III (Walsh) and Laura Blau (Blau), filed a Petition for the Appointment of a Conservator pursuant to the Act (Act 135 Petition), seeking to appoint the Coalition as conservator of the Property due to its severely blighted condition.[5] Teresa F. Isabella (Isabella) was the owner of the Property at the time and the sole respondent named in the conservatorship action, but Appellant was granted leave to intervene based upon its alleged purchase of the Property from Isabella during the pendency of the Act 135 Petition. Following a hearing, by order dated May 15, 2017, the trial court granted

---

[4] Appellant appealed these interlocutory orders pursuant to Pennsylvania Rule of Appellate Procedure 311(a)(2), which provides:

> (a) General Rule.–An appeal may be taken as of right and without reference to Pa.[]R.A.P. 341(c) [(relating to appeal of final order)] from:
>
> . . . .
>
> (2) *Attachments, etc.*–An order confirming, modifying, dissolving, or refusing to confirm, modify or dissolve an attachment, custodianship, receivership, or similar matter affecting the possession or control of property, except for orders pursuant to 23 Pa.[]C.S. §§ 3323(f), 3505(a).

[5] Walsh resides and operates a business near the Property, and Blau owns a rental property within 2,000 feet of the Property. (Original Record (O.R.), Item No. 2, at 4-5.) Under the Act, Walsh and Blau are considered "parties-in-interest" and have standing to initiate a conservatorship action. *See* Sections 3 and 4 of the Act, 68 P.S. §§ 1103-1104.

2

the Act 135 Petition and appointed the Coalition conservator of the Property (Appointment Order).

Litigation over the conservatorship continued, during which time the Coalition sought and obtained an order, dated September 22, 2018, from the trial court approving a final plan for blight remediation (Approval Order). *See* Section 6(c) of the Act, 68 P.S. § 1106(c) (relating to approval of final plan for abatement). Also during this time, Appellant filed a motion to strike the Appointment Order, appealed the Approval Order, and filed four motions seeking to terminate the conservatorship and/or remove the Coalition as conservator. No relief was afforded to Appellant with respect to its motion to strike the Appointment Order, its appeal of the Approval Order, or its first two motions to terminate.[6] As noted, the trial court likewise denied Appellant's third and fourth motions to terminate. These consolidated appeals followed.

On appeal,[7] Appellant raises five issues, which we condense and reorganize into the following three issues for ease of disposition: (1) whether the trial court

___

[6] The trial court denied Appellant's motion to strike the Appointment Order following a hearing, and this Court quashed Appellant's subsequent appeal from that order. *See 325 S. 18th St. v. Walsh* (Pa. Cmwlth., No. 353 C.D. 2018, filed May 30, 2018), *appeal denied*, 199 A.3d 345 (Pa. 2018). The trial court denied Appellant's first petition to terminate following an emergency hearing, and this Court affirmed. *See Walsh v. Isabella* (Pa. Cmwlth., No. 862 C.D. 2018, filed April 24, 2020) (*Walsh I*), *appeal denied*, 242 A.3d 913 (Pa. 2020). While Appellant's appeal of the Approval Order noted above was pending, Appellant filed its second motion to terminate, which the trial court denied. This Court affirmed the Approval Order and the trial court's order denying Appellant's second motion to terminate in *Philadelphia Community Development Coalition v. Isabella* (Pa. Cmwlth., Nos. 11-12, 268 C.D. 2019, filed August 28, 2020) (*Walsh II*), *appeal denied*, (Pa., Nos. 351-53 EAL 2020, filed February 17, 2021).

[7] We review the trial court's order to determine "whether the trial court abused its discretion or committed an error of law necessary to the outcome of the case." *City of Bethlehem v. Kanofsky*, 175 A.3d 467, 475 n.8 (Pa. Cmwlth. 2017) (quoting *In re Conservatorship Proceeding In Rem by Germantown Conservancy, Inc.*, 995 A.2d 451, 459 n.6 (Pa. Cmwlth. 2010)), *appeal denied*, 191 A.3d 744 (Pa. 2018).

3

lacked subject matter jurisdiction for a failure to comply with Section 5(a) of the Act, 68 P.S. § 1105(a); (2) whether the Coalition's failure to file a mandated status report compelled the grant of Appellant's third motion to terminate, where the Coalition made modifications to the final plan without a hearing; and (3) whether the trial court erred in denying Appellant's third and fourth motions to terminate, where the Coalition made modifications to the final plan, the trial court failed to hold hearings on the Coalition's modifications and Appellant's motions, and the trial court has generally abdicated its duties under Act 135.[8]

Preliminarily, we observe that, in support of the issues it raises, Appellant largely incorporates by reference or otherwise directs this Court to the arguments made in its third and fourth motions to terminate and various other documents filed below.[9] It is well settled that "such 'incorporation by reference' is an unacceptable manner of appellate advocacy for the proper presentation of a claim for relief" and that such a practice will result in waiver. *Commonwealth v. Briggs*, 12 A.3d 291, 342-43 (Pa. 2011); *see also Upper Moreland Twp. Sch. Dist. v. Crisafi*, 86 A.3d 950, 954 (Pa. Cmwlth. 2014) (concluding that appellant failed to present issue in accordance with rules of appellate procedure, as "incorporation by reference is not proper development of an issue raised in a brief"); *Jones v. Sch. Dist. of Phila.*, 206 A.3d 1238, 1250 (Pa. Cmwlth. 2019) (finding waiver where appellant "simply attempt[ed] to incorporate by reference the memorandum he submitted . . . below").

---

[8] By order dated October 21, 2020, this Court precluded Isabella, Walsh, and Blau from filing a brief in this matter for their failure to comply with an order of August 21, 2020, directing them to file a brief within 14 days of the exit date of that prior order.

[9] The documents Appellant seeks to incorporate by reference, in the aggregate, exceed 1,000 pages.

With the above pronouncements in mind, we address Appellant's claims to the extent that they are properly preserved and developed.

Appellant first argues that the trial court lacked subject matter jurisdiction because it failed to comply with Section 5(a) of the Act, which requires the court to act upon a petition submitted to it "by holding a hearing within 60 days of receipt of the petition and by rendering a decision no later than 30 days after completion of the hearing." Appellant argues that the temporal provisions in Act 135 are mandatory (not directory) and that the trial court's failure to comply with the 60-day provision set forth in Section 5(a) voids the underlying proceedings for lack of subject matter jurisdiction. The Coalition counters that the provisions of Act 135 relating to the time in which a court must act are directory in nature and do not operate to divest a court of jurisdiction.

As the Court observed in *Walsh II*, where we held that the timeline set forth in Section 6(c)(2) of the Act[10] is directory and that the Coalition's failure to comply with that requirement did not void the proceedings below:

> "Whether a statute is mandatory or directory must be determined by considering legislative intent gleaned from review of the entire statute and from considering the nature and object of the statute and the consequences of the construction of it one way or the other." *W. Penn Power Co. v. Pa. Pub. Util. Comm'n*, 521 A.2d 75, 78 (Pa. Cmwlth. 1987). When a statute directs that proceedings occur on a certain timeframe, those timeframes are directory unless the need for timeliness goes to "the essence of the thing required" to be performed under the statute. *Id.* In other words, unless compliance with the statutory temporal requirement is necessary to protect important statutory interests of participants in the proceedings, the temporal requirement is directory, not mandatory. *See id.* (citing *Pa. R. Co. v. Bd. of Revision of Taxes*, 93 A.2d 679, 682 (Pa. 1953) ("It is not

---

[10] Section 6(c)(2) of the Act, 68 P.S. § 1106(c)(2), provides: "Thirty days prior to the date of the hearing [on a conservator's final plan for abatement], the conservator shall submit the plan to the court and to all parties to the action."

5

necessary . . . that [the temporal requirement at issue] be interpreted as mandatory so long as the rights of property owners to protest their assessments and to appeal therefrom are respected.")). Failure to follow a mandatory temporal requirement renders the proceedings void, whereas failure to follow a directory timeline does not. *Id.*

*Walsh II*, slip op. at 12-13.

In *West Penn Power Company*, the Court addressed a situation in which "the adjudicatory body, not the litigants, . . . failed to comply" with the temporal provisions set forth in Section 332(g) of the Public Utility Code, 66 Pa. C.S. § 332(g), requiring an administrative law judge to hold a hearing within 90 days after a proceeding is initiated and render a decision within 90 days after the record is closed, unless the Public Utility Commission (Commission) allows an extension for good cause. *West Penn Power Co.*, 521 A.2d at 78 (emphasis omitted). Given that circumstance, the Court found *In re Moore*, 291 A.2d 531 (Pa. 1972), to be instructive, wherein the Supreme Court observed:

> The legislature may fix a time within which ministerial acts of procedure must be performed by litigants and parties so that the court may acquire jurisdiction of the subject matter and the courts will not alter this legislative mandate. [B]ut where the act to be performed within a fixed time involves the exercise of purely judicial functions, such as hearing and decision of matters properly before the court, or where it is impossible of judicial performance, . . . within the time fixed by the legislature, such provisions will be held to be directory and not mandatory.

*Moore*, 291 A.2d at 532 (citations omitted). Relying upon *Moore*, the *West Penn Power Company* Court held that the time limits set forth in Section 332(g) of the Public Utility Code are directory and do not operate to deprive the Commission of authority to enter an order. *West Penn Power Co.*, 521 A.2d at 78.

Here, Section 5(a) of the Act sets time limits within which the trial court must hold a hearing and render a decision on a petition. As this provision "involves the

exercise of purely judicial functions," *Moore*, 291 A.2d at 532, and in accordance with *Moore* and *West Penn Power Company*, we conclude that Section 5(a) is directory. Thus, the trial court's failure to comply with those time constraints does not deprive it of subject matter jurisdiction.

Appellant next argues that the Coalition's failure to file status reports as mandated by Section 6(b)(5) of the Act "constitutes a dereliction of duties so severe as to warrant termination" of the conservatorship under Section 10(4) of the Act. (Appellant's Brief at 40.) Section 6(b)(5) of the Act requires that, while in possession of the building, a conservator must "[s]ubmit a status report to the court and parties to the action annually or more frequently as the court may deem appropriate." 68 P.S. § 1106(b)(5). Section 6(b)(5) also sets forth the following information to be included in the report: "[a] copy of any contract entered into by the conservator regarding the improvement of the building," "[a]n account of the disposition of all revenue generated from the building," "[a]n account of all expenses and improvements," "[t]he status of developing and implementing the final plan pursuant to this subsection," and "[a] description of any proposed actions to be taken in the next six months to improve the building." 68 P.S. § 1106(b)(5)(i)-(v).[11]

As the Coalition notes in its brief, Appellant fails to explain in its argument how the Coalition did not comply with Section 6(b)(5) of the Act. Instead, Appellant generally asserts that termination is proper because, as "the record establishes" and "as argued extensively" in its motions to terminate and other documents, the

---

[11] Section 10(4) of the Act, 68 P.S. § 1110(4), provides:

Upon request of a party in interest or the conservator, the court may order the termination of the conservatorship if it determines: . . . the conservator has been unable, after diligent effort, to present a plan that could be approved under [S]ection 6(b)(3) or to implement a previously approved plan or, for any reason, the purposes of the conservatorship cannot be fulfilled.

7

Coalition failed to comply with its statutory duties under that provision and other alleged "mandatory" provisions of the Act. (Appellant's Brief at 40-41.) As Appellant has failed to develop a proper appellate argument in support of its claim, we conclude that it is waived.[12] *See Briggs*, 12 A.3d at 342-43; *Crisafi*, 86 A.3d at 954; *Jones*, 206 A.3d at 1250. Thus, Appellant is not entitled to relief on this claim.

Lastly, Appellant argues that the trial court erred in denying its third and fourth motions to terminate without holding necessary hearings or otherwise giving due consideration to the claims made in the motions. Appellant contends that the trial court's failures resulted in the expansion of the Coalition's rights and the abridgement of Appellant's rights under Act 135. Appellant adds that the trial court's actions violate Appellant's rights to due process and equal protection, further noting that other litigants in a separate Act 135 proceeding were afforded hearings on their motion to terminate. Appellant also argues that the trial court's "lack of judicial temperament" and other alleged shortcomings with respect to its oversight of the conservatorship, particularly its treatment of Appellant, the parties'

---

[12] Notwithstanding our conclusion above, it appears from a reading of Appellant's question presented that Appellant takes issue with the Coalition's alleged failure to file a status report "where [the Coalition] made material modifications to the final plan . . . without first having a hearing" in violation of Section 6(c)(7) of the Act. (Appellant's Brief at 6.) First, as we discuss in more detail below, Section 6(c)(7) does not require a hearing when a conservator makes modifications to a final plan. Second, to the extent Appellant claims that a status report was likewise required based upon the Coalition's alleged modifications to the final plan following that plan's approval, Section 6(b)(5) of the Act only requires the submission of a status report annually, unless the trial court deems it appropriate to require more. Here, the final plan was approved by order dated September 22, 2018. The Coalition contends, and our review of the record confirms, that the Coalition filed a status report on the implementation of its final plan on September 20, 2019. (O.R., Item No. 235.)

8

submissions, and Act 135's provisions, have prejudiced the proceedings and parties so as to require reversal of the orders on appeal. (Appellant's Brief at 43-44.)

The Coalition counters that the trial court properly exercised its discretion in denying Appellant's third and fourth motions to terminate without a hearing. The Coalition adds that Act 135 does not require a hearing each time a conservator deviates from a court-approved final plan and that the claims made in Appellant's underlying motions before the trial court—which Appellant does not develop in its brief on appeal to this Court—are meritless. The Coalition also argues that there is no support in the record or the law for Appellant's claims regarding the trial court's alleged improprieties or inadequacies.

Initially, Appellant has failed to cite, and the Court has not identified, any provision of Act 135 requiring the trial court to hold a hearing on a motion to terminate prior to issuing a decision on the motion. While Appellant relies upon Section 6(c)(7) of the Act, that provision requires a hearing date to be set upon a trial court's decision requiring a final plan to be amended. *See* 68 P.S. § 1106(c)(7) ("If the court decision requires that the plan be amended, a hearing date shall be set within 60 days from the date of the decision."). Thus, Section 6(c)(7) provides no support for Appellant's claim in this regard.[13]

Turning to the trial court's disposition of Appellant's motions, we note the following. In its opinions issued pursuant to Pennsylvania Rule of Appellate

---

[13] To the extent Appellant argues that Section 6(c)(7) of the Act generally requires a hearing for any modifications made to a court-approved final plan, we again disagree. Indeed, in *Walsh II*, we observed: "Section 6(c)(7) of the Act contemplates [a] hearing, but only if the *Approval Order* had required amendment of the Plan (which it did not), not if the Coalition's *actions* as conservator require modification of particular aspects of the Plan. No section of the Act requires any hearing on the status of ongoing remediation work pursuant to an approved final plan." *Walsh II*, slip op. at 18 n.11.

9

Procedure 1925(a),[14] the trial court first observed that its decision on whether to remove the Coalition as conservator is discretionary under the Act. *See* Section 5(i) of the Act, 68 P.S. § 1105(i) ("A conservator may be removed by the court at any time upon the request of the conservator or upon a showing by a party to the action that the conservator is not carrying out its responsibilities under this act."); *see also* Section 10 of the Act, 68 P.S. § 1110 (providing that "the court may order the termination of the conservatorship" upon request of party in interest or conservator if it determines that certain enumerated conditions are met). The trial court continued by reasoning that Appellant's third and fourth motions to terminate were nearly identical to its prior motions to terminate. The trial court explained that, just as the case was in the context of the prior motions, Appellant failed to present any evidence to compel the trial court to remove the Coalition as conservator as permitted by the Act. The trial court observed that, instead, Appellant presented bald assertions about the Coalition's malfeasance as to the scope of the work being performed.

The trial court added that it had approved the Coalition's final plan and that the Coalition was in the midst of implementing that plan. The trial court explained that, once the Coalition was finished, a hearing would be held to review the work performed. At that time, the Coalition would have the opportunity to provide a final accounting for review prior to the approval of the Property for sale, and the trial court would not permit the Coalition to be reimbursed under Act 135 for any nonconforming work or unsubstantiated costs. The trial court also specifically

---

[14] With regard to Appellant's third motion to terminate, the trial court issued a Rule 1925(a) opinion on November 26, 2019, followed by an amended Rule 1925(a) opinion on December 5, 2019. The trial court issued a Rule 1925(a) opinion concerning Appellant's fourth motion to terminate on February 21, 2020. Our summary of the trial court's reasoning is taken from all three opinions, which are substantially similar.

10

addressed Appellant's claims relating to the necessity of additional hearings, concluding that they were not required under Act 135 as Appellant alleged, and the Coalition's purported failure to file a required status report, observing that, *inter alia*, the Coalition submitted a status report on September 20, 2019, and additional status reports were not yet deemed to be necessary. Finally, the trial court rebuffed Appellant's accusations that the trial court was lacking in objectivity or otherwise unqualified to preside over the matter, noting that it was competent to oversee the conservatorship and that Appellant had not presented evidence or meritorious arguments in support of its claims.

Based on the foregoing, we discern no abuse of discretion or error of law committed by the trial court. In arguing to the contrary before this Court, Appellant has similarly failed to provide developed argument beyond bald allegations of error and improprieties on the part of the trial court and the Coalition, and its incorporation by reference of the arguments made in various filings below, which, again, we decline to consider. Appellant is thus not entitled to relief.

For the reasons discussed above, we cannot conclude that the trial court erred or abused its discretion in denying Appellant's third and fourth motions to terminate the Coalition's conservatorship. Accordingly, we affirm the orders of the trial court.

P. KEVIN BROBSON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles J. Walsh, III and                    :
Laura Blau and Philadelphia          :
Community Development                  :
Coalition                                          :
                                                           :
                    v.                                 :        Nos. 1689 & 1781 C.D. 2019
                                                           :
Teresa F. Isabella and                    :
325 S. 18th Street, LLC                 :
                                                           :
Appeal of: 325 S. 18th Street, LLC      :

# **O R D E R**

AND NOW, this 23rd day of June, 2021, the orders of the Court of Common Pleas of Philadelphia County, dated October 21, 2019, and December 9, 2019, are hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge
