## Pennsylvania Railroad Company, Appellant, *v.* Board of Revision of Taxes.

Argued November 17, 1952. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Harold E. Kohn,* with him *Robert McCay Green,* for appellant.

*Joseph H. Lieberman,* Solicitor for Board of Revision of Taxes, with him *Abraham L. Freedman,* City Solicitor, and *Michael D. Hayes,* Assistant City Solicitor, for appellees.

OPINION BY MR. JUSTICE JONES, January 12, 1953:

This appeal is from an order sustaining an increased realty assessment made by the Board of Revision of Taxes for Philadelphia County. The procedure to be followed by the Board in making such an assessment is prescribed by the Act of June 27, 1939, P. L. 1199, 53 PS §4805.1 et seq. Section 10 (53 PS §4805.10) provides that "At least ten days prior to the first Monday in October of each year, the board shall give printed or written notice to the registered owners of all real property situated within the county, the assessment upon which has been increased or decreased, specifying the change made from the last preceding assessment, and setting forth that an appeal may be filed from such assessment on or before the first Monday of October, and stating as definitely as possible the time or times at which appeals will be heard by the board . . . ." The valuation placed upon the property by the Board's increased assessment is expressly not contested. The sole question involved is whether the foregoing statutory provision as to the time of sending notice of the change in assessment is mandatory or directory.

The land, which was the subject-matter of the increased assessment, had been owned by the Pennsylvania Railroad Company for many years. Adjoining it was a larger tract which the Railroad company had sold and conveyed to the Cuneo Eastern Press, Inc., in 1936. On January 7, 1947, the Railroad company *leased* to the Cuneo company the property first above mentioned with permission to Cuneo in the lease to erect on the property a bindery and warehouse, and on the following day (January 8, 1947) the Railroad company agreed in writing to sell the leased property to Cuneo with "Settlement to be made as of December 1, 1946, and taxes apportioned accordingly." Cuneo thus became liable, as between it and the Railroad company, for all taxes due on the leased property from January 1, 1947, onward. A year and a half later, viz., on August 25, 1948, Cuneo entered into a contract with Robert E. Lamb & Son, Inc., building contractors, for the erection of a warehouse and a bindery on Cuneo's property, both that which it had owned since 1936 (on which there were already some buildings) and the property which it occupied under the lease of January 7, 1947, and to which it had not yet taken title under the agreement of sale of January 8, 1947. Construction under the contract with Lamb was begun in October 1948 and was completed, according to the Railroad company, the present appellant, in May 1949, but, according to the City of Philadelphia, the appellee, around November 1949. In effectuation of the agreement of sale of January 8, 1947, the Railroad company conveyed the leased land to Cuneo by deed of July 8, 1949. The deed was not recorded, however, until November 30, 1950.

During the summer of 1949, the district real estate assessor, acting pursuant to the precept to assess issued to him by the Board of Revision, obtained from the

real estate department of the Railroad company a plan of the land, both leased and sold to Cuneo. The assessor checked this plan with the plans for the buildings to be erected thereon which Cuneo had filed with the department of building inspection of the City. The plans coincided and each showed the land as belonging to Cuneo. It was, in fact, the assessor's understanding that all of the land on which the buildings stood was the property of Cuneo; and, having concluded in November 1949 that the buildings had been completed, he sent to Cuneo on December 1, 1949, one notice of the increased assessment for the ensuing calendar year 1950, the assessment covering the whole of the new construction and all of the land on which it was situate.

Cuneo filed a protest against the increased assessment on or before December 16, 1949, within the time allowed therefor according to the notice. The basis of the protest was that "notice [of the increased assessment] was not given as required by statute prior to October 1." A hearing was held on the protest before the Board of Revision of Taxes on December 27, 1949. At a further hearing on April 12, 1950, counsel for Cuneo pointed out that, at the time of the assessment, Cuneo (which was then the actual owner) was not the *registered* owner of the portion of the land, occupied by that company under the lease and requested that that company's increased assessment be reduced commensurately. The Board complied, deducting from the increased assessment $38,800 for the land and $270,173 for the portion of the new construction on the land. Cuneo then paid its 1950 realty taxes on the basis of the assessment as so corrected. At the same time, however, the Board directed that the increase deducted from the Cuneo assessment be added to the assessment of the registered owner of the land,

namely, the Railroad company. That was done and notice of the increased assessment was given to the Railroad company two days later, viz., on April 14, 1950. It is that assessment which the Railroad company appealed to the court below whose affirmance thereof is the subject of the present appeal to this court. Cuneo, as already appears, is the party substantially interested, being bound by its contract with the Railroad company of January 8, 1947, for all taxes on the demised premises.

In *McQuiston's Adoption*, 238 Pa. 304, 308, 86 A. 205, it was said that "Whenever such question [whether a statutory provision is mandatory or directory] arises it is the legislative intent that determines, and this intent is to be ascertained first of all from the statute itself, and as applied to the subject matter to which it relates." In support of the foregoing, the following was quoted from 36 Cyc. 1157: "Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the legislature, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other." This rule was reiterated and approved by the Superior Court in *Baldwin Appeal*, 153 Pa. Superior Ct. 358, 362, 33 A. 2d 773,—a case that is indistinguishable from the present in principle. In *Commonwealth ex rel. Kelley v. Pommer*, 330 Pa. 421, 436, 199 A. 485, we recognized on the authority of a number of prior decisions of this court (there cited) " 'that whether a statute is mandatory or not depends on whether the thing directed to be done is of the essence of the thing required' ".

Coming to the Act of 1939, supra, it is not necessary, in order to protect property owners from unjust or inequitable taxation or from overreaching by

the Board of Revision or by an assessor, that Section 10, which specifies the time for giving notice of a change in assessment, be interpreted as mandatory so long as the rights of property owners to protest their assessments and to appeal therefrom are respected. On the other hand, if the provision were construed to be mandatory, a property owner would escape taxation throughout the succeeding calendar year on all new construction completed after the third Monday of September of the assessment year. By Section 8 of the Act, the Board is enjoined to complete its revisions of all assessments by the third Monday of September. Such assessments are designed to serve as the bases for ascertaining tax liabilities in the succeeding year. The intendment of Section 8 of the Act is that all revisions of assessments be completed at the time specified insofar as the circumstances permit and Section 10 that notice of a changed assessment be given within the time relative to the revision as specified by the Act. Moreover, the Act was not intended to afford an escape for a property owner from just taxation because of the oversight, inadvertence or dilatoriness of an assessor or of the Board of Revision.

The one ultimately responsible in the instant case for the taxes on the property in question, namely, the Cuneo company, was not harmed by the fact that notice of the changed assessment was not given until December 1, 1949. It was allowed the customary fifteen days from the date of the notice of the increased assessment within which to protest the change and, in fact, did so protest. And, it was at a hearing on the merits of the Cuneo protest, duly held by the Board, that, at Cuneo's instance, a reduction in the assessment against it was actually granted by the Board. A corresponding increase was, of course, contemporaneously made in the assessment of the Railroad com-

pany in whose name the formerly leased land (then owned by Cuneo) was still registered. The Railroad company will not ultimately be responsible for any of the taxes and Cuneo will be required to pay no more than it rightly should, namely, the whole of the taxes due for 1950 on the property and improvements covered by the assessment and actually owned by Cuneo throughout that year. In *Baldwin Appeal,* supra, which involved an appeal from an assessment made under The General County Assessment Law of May 22, 1933, P. L. 853, the property owner based his appeal on the ground that the assessor had failed to file his return to the assessment precept within the time specified by the Act. Judge RHODES, speaking for a unanimous court, said,—"Appellant [property owner] had notice of the reassessments; he appealed and was heard before the board of revision; he was deprived of no right. Consequently, we fail to see why he or anyone in a similar position should escape taxation for an entire year on their real estate by giving the construction urged to the provision in the act as to the time of the assessor's return. Wherever possible acts should be construed so that there is an equalization of the burden of taxation. It is our conclusion that the time of the return in the present case did not invalidate the assessments or render them void." The same is equally true here; and we, accordingly, hold that the time limitation in Section 10 of the Act of 1939, supra, is directory merely.

The cases cited by the appellant to the effect that tax statutes are to be construed strictly against the taxing authority and most favorably to the taxpayer are not presently germane. To hold that a time limitation in a statute is directory rather than mandatory does not mean that the statute has been liberally construed. A strict construction is capable of producing

the same result. In final analysis, the inquiry under either form of construction is as to the correct legislative intent. Nor does any rule of construction require that the statutory procedural provisions for the assessment of property for taxation be so interpreted as to permit a particular taxpayer to escape payment of his fair share of the tax burden.

The order affirming the assessment is affirmed at the appellant's costs.