521 A.2d 75

# West Penn Power Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued October 7, 1986, before President Judge CRUMLISH, JR., Judge DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Edward S. Stiteler,* for petitioner.

*Richard A. Cohn,* Assistant Counsel, with him, *Louise A. Knight,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Richard G. Fishman,* for intervenor, Goldie King.

OPINION BY JUDGE DOYLE, February 13, 1987:

This is an appeal by the West Penn Power Company (West Penn) from an order of the Public Utility Commission (Commission) adopting the order of Administrative Law Judge SOLOMON (ALJ), which directed that West Penn amend its Manual of Procedures pertaining to credit standards "to insure that the absence of prior credit history on the part of the customer does not, in and of itself, result in a determination that a customer is an unsatisfactory credit risk." The order further directed that the Manual of Procedures and related forms pertaining to the collection of security deposits from applicants be amended, thus ending West Penn's practice of "issuing a notice of termination prior to the occurrence of a default on the part of a customer who has been requested to pay a security deposit." The ALJ also ordered payment of a $250 civil fine. This amount was increased by the Commission to $1,000, but in all other respects the Commission adopted the order of the ALJ.

This case was brought before the Commission by a private complainant, Goldie King. King, who is separated from her husband, began receiving service from West Penn on January 17, 1984 at her residence at 214

East Cherry Lane, Bellefonte, Pennsylvania. On February 10, 1984 King completed a written application for electric service with West Penn. On her application, in answer to an inquiry as to the length of her lease, King marked "None." By letter dated February 24, 1984 West Penn notified King that "a security deposit would be necessary because of no prior credit history" and that if such deposit were not forthcoming by March 5, 1984 her service would be terminated. King had no credit history in her own name because all credit accounts had been maintained in her husband's name. In the same envelope as the above-described letter, West Penn enclosed a notice to King that her electric service "will be terminated on or after 8:30 a.m. March 5, 1984. This action is to be taken because your security deposit of $100.00 will be past due." At the time that these notices were sent to King, her account was current and not in any way delinquent. On March 2, 1984 King presented her one-year lease to West Penn, which then withdrew its request for a security deposit. At all times relevant to this case, West Penn's Manual of Procedures provision on credit standards read:

> If service is connected pending credit investigation and customer's credit rating proves unsatisfactory, prepare Termination Notice for Applicant with Unsatisfactory Credit, form 11-191 [later retitled Security Deposit Request-Applicant] in duplicate and Termination Notice-Resident Ratepayer, form 11-189.

Commission Regulation 56.32, 52 Pa. Code §56.32, relating to credit standards, states in relevant part:

> A utility shall provide residential service without requiring a deposit when the applicant satisfies one of the following requirements . . .
>
> (2) . . . The applicant . . . is renting his place of residence under a lease of one year or

longer in duration, unless the applicant has an otherwise unsatisfactory credit history as an [sic] utility customer within two years prior to the application for service.

In addition this regulation further provides:

(i) The absence of prior credit history does not, of itself, indicate an unsatisfactory risk.

The ALJ found that West Penn had violated Regulation 56.32 by requiring a security deposit from King based only upon its determination that she had no prior credit history. And, although West Penn contends that that was only one of its reasons for requiring the security deposit, the ALJ found that no other reason was given to King. The ALJ also found, however, that King was not entirely without fault because she had not on her application indicated the existence of her one-year lease and that when such information was provided to West Penn, it withdrew its request for a security deposit. Therefore, the ALJ imposed no sanction against West Penn for this violation.

The ALJ then considered the issue of whether the mailing of the termination notice along with the security deposit request was in violation of the Commission's regulations. He noted first that under Regulation 56.99, 52 Pa. Code §56.99, a utility is not permitted to threaten to terminate service when it has no present intent to do so. He recognized in addition that Regulation 56.99 prohibits the use of a termination notice as a collection device. After examining the letter sent to King requesting the security deposit,[1] the ALJ concluded that because in this instance the intent of the notice to termi-

---

[1] King's deposit request letter stated in pertinent part: If you do not accomplish one of the above by 3-5-84 your service will be terminated and you will be billed for the service actually used.

nate was to cause payment of the security deposit, a violation had occurred. He also found, based on the evidence, that West Penn's own internal operating procedures instructed employees to transmit simultaneous requests for security deposits and termination notices and considered this an aggravating circumstance. Therefore, in addition to determining that violations had occurred, he assessed a civil penalty. Exceptions to his initial determination were filed, and a minor semantics modification to the order was made. On further appeal the Commission affirmed the order but, as noted above, increased the amount of the penalty.

On appeal to this Court, West Penn does not argue that it did not violate the Commission's regulations. Instead, it asserts (1) that because the request for the security deposit was withdrawn the case is moot, (2) that King suffered no injury so that the case should be dismissed, and (3) that the ALJ's initial order is null and void because it was not entered within 90 days after the record was closed.

We shall examine this last point first inasmuch as the allegation is that the referee and Commission lacked subject-matter jurisdiction to enter *any* order more than 90 days after the record had been closed. Section 332(g) of the Public Utility Code (Code), 66 Pa. C. S. §332(g), pertaining to procedures before the Commission, provides in pertinent part:

> [H]earings shall be commenced by the administrative law judge within 90 days after the proceeding is initiated, and he shall render a decision within 90 days after the record is closed, unless the Commission for good cause by order allows an extension not to exceed an additional 90 days.

It is agreed that no extension was sought and that the order was not entered by the ALJ until eleven months after the record was closed. It appears that this delay

was attributable to the resignation of the administrative law judge, who heard the testimony on June 18, 1984, but who resigned prior to rendering a decision. Although the record was closed on August 1, 1984, the Commission did not reassign the case to ALJ SOLOMON until May 15, 1985. His decision was issued on July 1, 1985. West Penn argues that Section 332(g) of the Code is mandatory and, hence, that after a 90-day period no order can validly be entered. The Commission contends that the time limit is directory only.

Whether a statute is mandatory or directory must be determined by considering legislative intent gleaned from review of the entire statute and from considering the nature and object of the statute and the consequences of the construction of it one way or the other. *Pennsylvania Railroad Company v. Board of Revision of Taxes*, 372 Pa. 468, 93 A.2d 679 (1953). If the thing directed to be done is the essence of the thing required, the statute is mandatory. *Id.* If, however, the statute merely directs that certain proceedings be done in a certain manner or at a certain time, it is directory. *Prichard v. Willistown Township School District*, 394 Pa. 489, 147 A.2d 380 (1959). Failure to follow a mandatory statute renders the proceedings void, whereas failure to follow a directory statute does not. *American Labor Party Case*, 352 Pa. 576, 44 A.2d 48 (1945).

We note initially that it was the *adjudicatory body,* not the litigants, which failed to comply with the time provisions. For this reason we find this case analogous to *Moore Nomination Petition,* 447 Pa. 526, 291 A.2d 531 (1972). The issue in *Moore* was whether the provision in Section 977 of the Pennsylvania Election Code,[2] 25 P.S. §2937, requiring the Commonwealth Court to hold a hearing on a challenge to a nominating petition within

---

[2] Act of June 3, 1937, P.L. 1333, *as amended.*

certain time restrictions, was mandatory or directory. There, as here, the time constraint was one imposed upon the adjudicatory body, not the litigants. The *Moore* court explained that, while the legislature may fix a time within which ministerial acts of procedure must be performed by the litigants, it cannot fix a time in which the exercise of the purely judicial function must occur and, thus, when a statute appears to do so it will be construed as directory. Here, admittedly, the adjudicatory body is an administrative agency and not a court. And, if we construe the statute as mandatory, the effect *is* to punish at least one of the litigants for the actions of the adjudicator. Certainly the legislature could not have intended such a result. The claim here is one of genuine interest to the public and we believe that the legislature desired that such matters be heard and resolved by the Commission, provided that *the parties* have properly complied with mandatory deadlines *applicable to them.* We thus hold that the time limits in Section 332(g) are directory only and, accordingly, when they are not complied with they do not operate to deprive the Commission of authority to enter an order.

West Penn next argues that because it withdrew its request for a security deposit the case is moot. While this is debatable because the injunctive order and fine were imposed because of uncontested *violations* of West Penn, even assuming *arguendo* that the issue is moot at least as to King, the ALJ found that West Penn has repeatedly used collection procedures which were in violation of Commission regulations.

Although generally a court will not decide moot cases, there is an exception where the conduct complained of is capable of repetition, yet will evade future review. *Commonwealth v. Joint Bargaining Committee for the Pennsylvania Social Services Union,* 484 Pa. 175, 398 A.2d 1001 (1979). In the instant case, were we to permit King's appeal to be dismissed as moot, West

Penn could continue its tactics of unjustifiably demanding security deposits and withdrawing its requests for such deposits only when challenged by ratepayers, many of whom may be unsophisticated and hence hesitant about asserting their rights. Thus, we believe this case is one falling within the exception to the mootness doctrine recognized in *Joint Bargaining Committee*. In addition, this case clearly involves questions important to the public interest and this, too, is a factor to be considered in deciding whether the mootness doctrine should be applied. *See Allen v. Colautti*, 53 Pa. Commonwealth Ct. 392, 397, 417 A.2d 1303, 1306 (1980).

West Penn in a related argument contends that King has not been injured and therefore that the case before the Commission should have been dismissed on this basis. We disagree. It is well-settled that the Commission is without power to grant a remedy to injured litigants. *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977). It may use its remedial powers only to govern public utility policies. *Id*. Therefore, even if a complainant could demonstrate an individual injury in the nature of monetary damage, the Commission could not provide him relief. To require such a showing of injury when no relief could be granted is to construe the law in an absurd fashion and we decline to do so. Case law does instruct, however, that a violation of the Code is an injury *per se* to the general public. *Pennsylvania Public Utility Commission v. Israel*, 356 Pa. 400, 406, 52 A.2d 317, 321 (1947). We thus believe that, if the complainant can demonstrate that such violation occurred with respect to him or her personally, an injury *per se* is shown. King has done so in the instant case and, accordingly, the Commission properly refused to dismiss the case on this basis.

Having determined that the Commission correctly resolved the issues below, we affirm its order.

ORDER

Now, February 13, 1987, the order of the Public Utility Commission, Docket No. C-844087, entered October 29, 1985, is hereby affirmed.

---

DISSENTING OPINION BY SENIOR JUDGE KALISH:

I must respectfully dissent.

On February 24, 1984, West Penn, by letter, requested that King post a security deposit by March 5, 1984, because she had no credit history. Enclosed within the letter requesting a security deposit was a notice that if the security deposit was not paid by a certain time, service would be terminated. When she showed West Penn a one-year lease to her present address, she was given electric service without paying a security deposit and was informed that there would be no termination of service.

King filed a complaint with the Commission, contending that it was wrong for West Penn to request a security deposit and simultaneously send a termination of service notice if the deposit is not paid by a certain time. She filed her complaint as an individual and not in the form of a class action. West Penn contends that when the matter reached the Commission and indeed this Court, it was moot.

The Commission found that under the circumstances involving West Penn's withdrawal of the deposit request and termination notice, it would be unjust to impose a sanction upon the utility. In other words, as to this situation, there was no justiciable issue. However, it felt that since the termination notice was sent simultaneously with the request for a security deposit, this termination notice constituted a collection device contrary to the Commission's regulations.

The mootness doctrine requires that the exercise of judicial power depends upon the existence of a contro-

versy, a justiciable issue existing at all times of review. In making this determination, one of the most important factors to be considered is whether an issue is capable of repetition, yet escaping review. *In Re Gross,* 476 Pa. 203, 382 A.2d 116 (1978); *DeFunis v. Odegaard,* 416 U.S. 312, 40 L.Ed. 2d 164, 94 S.Ct. 1704 (1974).

A party's cessation of conduct sought to be prohibited by administrative action does not render a case moot unless there is a showing, *as to the complaining party,* that there is no reasonable expectation of repetition of the wrong. *DeFunis. As to this applicant,* Goldie King, the Commission recognized that except for the termination notice, there would be no controversy. However, the termination notice was so inextricably bound to and conditioned on the security deposit request, that once that request was rescinded, the termination notice was of no effect, and there was no longer a justiciable issue at hand. The entire matter was moot.

Under the circumstances of this case, there was no reasonable expectation of a repetition. There was no conduct to enjoin. This was not a class action. The applicant was not suffering a continuing harm. Nor was this issue of such great importance that this court should reach the merits as in *Wortex Mills, Inc. v. Textile Workers Union of America,* 369 Pa. 359, 85 A.2d 851 (1952), where there was a question of interplay between constitutional law and labor law.

Accordingly, I would reverse the decision of the Commission.