# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Community :
Development Coalition, :
Laura Blau, and Charles J. :
Walsh, III :
:
      v. : No. 11 C.D. 2019
:
Teresa F. Isabella and :
325 S. 18th Street, LLC :
:
Appeal of: Teresa F. Isabella :
:
:
Charles J. Walsh, III and :
Laura Blau and Philadelphia :
Community Development :
Coalition :
:
      v. : No. 12 C.D. 2019
:
Teresa F. Isabella and :
325 S. 18th Street, LLC :
:
Appeal of: 325 S. 18th Street, LLC :
:
:
Charles J. Walsh, III and :
Laura Blau and Philadelphia :
Community Development :
Coalition, Inc. :
: No. 268 C.D. 2019
Teresa F. Isabella and : Submitted: November 1, 2019
325 S. 18th Street, LLC :
:
Appeal of: 325 S. 18th Street, LLC :

**BEFORE:** HONORABLE P. KEVIN BROBSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED: August 28, 2020**

In these consolidated appeals, Appellants Teresa F. Isabella (Isabella) and 325 S. 18th Street, LLC (18th Street) (collectively, Appellants) appeal from three orders of the Court of Common Pleas of Philadelphia County (trial court). The orders arise out of a proceeding under the Abandoned and Blighted Property Conservatorship Act,[1] commonly known as Act 135 (Act or Act 135), relating to the property known as 325 S. 18th Street in Philadelphia, Pennsylvania (Property). 18th Street challenges two orders: (1) the trial court's September 22, 2018 order (Approval Order), approving the blight remediation plan for the Property submitted by the Property's appointed conservator, the Philadelphia Community Development Coalition (the Coalition); and (2) the trial court's February 6, 2019 order (Termination Order), denying 18th Street's second motion to terminate the

---

[1] Act of November 26, 2008, P.L. 1672, *as amended*, 68 P.S. §§ 1101-1111.

2

conservatorship of the Property. Isabella also challenges the trial court's Approval Order.[2,3] For the following reasons, we affirm the trial court's orders.

## I. BACKGROUND

The relevant procedural history of this case is as follows. On June 3, 2016, the Coalition and two individuals, Charles W. Walsh, III (Walsh) and Laura Blau (Blau), filed a Petition for Appointment of a Conservator pursuant to the Act (Act 135 Petition), seeking to appoint the Coalition as conservator of the Property due to its severely blighted condition.[4] At the time, Isabella owned the Property and was named the sole respondent in the conservatorship action. On April 28, 2017,

---

[2] Although Isabella, in her notice of appeal filed on October 16, 2018, identified only the trial court's October 4, 2018 order denying her motion for reconsideration of the Approval Order, she filed her notice of appeal within the time allowed for appealing the Approval Order and her arguments on appeal are directed at the Approval Order. Thus, because the trial court's denial of reconsideration is not reviewable on appeal, *In re Merrick's Estate*, 247 A.2d 786, 787 (Pa. 1968), the Court is treating Isabella's timely appeal as if it challenges the Approval Order itself. Appellees do not contend that Isabella's appeal should be quashed on the basis that she is appealing an order denying reconsideration.

[3] Appellants appealed these interlocutory orders pursuant to Pennsylvania Rule of Appellate Procedure 311(a)(2), which provides:

> (a) General Rule. – An appeal may be taken as of right and without reference to Pa. R.A.P. 341(c) [(relating to appeal of final order)] from:
>
> . . . .
>
> (2) Attachments, etc. – An order confirming, modifying, dissolving, or refusing to confirm, modify or dissolve an attachment, custodianship, receivership, or similar matter affecting the possession or control of property, except for orders pursuant to 23 Pa. C.S. §§ 3323(f), 3505(a).

[4] Walsh resides and operates a business near the Property, and Blau owns a rental property within 2,000 feet of the Property. (Reproduced Record (R.R.) Volume (Vol.) I at 52a-53a.) Under the Act, Walsh and Blau are considered "part[ies-]in[-]interest" and have standing to initiate a conservatorship action. *See* Sections 3 and 4 of the Act, 68 P.S. §§ 1103-1104.

while the Act 135 Petition was pending, 18th Street allegedly purchased the Property from Isabella for $1,000,000. On May 2, 2017, the trial court held a hearing on the Act 135 Petition to determine whether the statutory conditions existed for appointment of a conservator. The trial court granted 18th Street, as the purported owner of the Property, leave to intervene as a party-in-interest and to participate fully at the May 2, 2017 hearing. Following the hearing, by order dated May 15, 2017 (and docketed May 17, 2017), the trial court granted the Act 135 Petition and appointed the Coalition conservator of the Property (Appointment Order). (R.R. Vol. I at 569a-71a.) Appellants have not successfully appealed the Appointment Order, and its validity is not at issue in this appeal.[5]

Eleven months later, on April 24, 2018, 18th Street filed the first of two petitions seeking to terminate the conservatorship. In the first petition, 18th Street alleged that the Coalition had allowed dangerous and unlawful conditions to persist on the Property and was not proceeding with remediation work. After holding an emergency hearing, the trial court denied the petition on May 23, 2018. 18th Street appealed the trial court's denial of its first termination petition to this Court, and we affirmed. *See Walsh v. Isabella* (Pa. Cmwlth., No. 862 C.D. 2018, filed April 24, 2020) (*Walsh I*). We reasoned, in part, that blighted conditions would logically persist on the Property until approval and implementation of a final plan for remediation, which had not occurred as of the time of the filing of the first termination petition. *Id.*, slip op. at 10-11.

---

[5] 18th Street did not appeal the Appointment Order. Isabella filed a notice of appeal, docketed with this Court as *Walsh v. Isabella*, 791 C.D. 2017, but we dismissed the appeal for failure to comply with a defect correction notice. On June 27, 2017, 18th Street filed with the trial court a motion to strike the Appointment Order, which the trial court denied following a hearing. 18th Street appealed to this Court, and, by memorandum and order, we quashed the appeal. *See 325 S. 18th St. v. Walsh* (Pa. Cmwlth., No. 353 C.D. 2018, filed May 30, 2018) (2018 Appeal).

4

On July 13, 2018, the Coalition filed a motion requesting a hearing for consideration and approval of a final plan for blight remediation, as contemplated in Section 6(c) of the Act, 68 P.S. § 1106(c). The trial court granted the motion and scheduled a hearing for August 22, 2018. On July 24, 2018, the Coalition filed with the trial court and served on Appellants a document entitled "Conservator's Final Plan," which was docketed as a praecipe to supplement the Coalition's motion for approval of the final plan. (R.R. Vol. I at 20a, Vol. VI at 2866a.) Following the hearing on August 22, 2018, the trial court issued the Approval Order, which approved the plans submitted by the Coalition as the final blight remediation plan for the Property (Plan). On September 25, 2018, 18th Street filed a motion for reconsideration of the Approval Order, but, before the trial court disposed of that motion, 18th Street initiated the instant appeal directly from the Approval Order. On October 3, 2018, Isabella filed a motion for reconsideration of the Approval Order, and on October 4, 2018, the trial court denied that motion. Isabella then appealed to this Court. On November 16, 2018, the Coalition filed a motion to quash Isabella's appeal (Motion to Quash). By order dated January 30, 2019, we directed that the Motion to Quash be listed for disposition with the merits of this appeal.

On January 15, 2019, while its appeal of the Approval Order was pending, 18th Street filed a second termination petition (Second Termination Petition). 18th Street sought termination of the conservatorship and/or removal of the Coalition as conservator, essentially on the basis that the Coalition had failed to implement the Plan. On February 6, 2019, the trial court issued the Termination Order, in which it denied the Second Termination Petition and declined to disturb the conservatorship. As noted above, this matter addresses 18th Street's appeal of both the Approval Order and the Termination Order.

5

## II. ISSUES ON APPEAL

On appeal,[6] Appellants raise a total of 17 issues for consideration. Most of the issues, however, involve matters that are irrelevant,[7] outside the scope of this appeal, or waived because they were not raised before the trial court.[8] We will not

---

[6] We review the trial court's order to determine "whether the trial court abused its discretion or committed an error of law necessary to the outcome of the case." *City of Bethlehem v. Kanofsky*, 175 A.3d 467, 475 n.8 (Pa. Cmwlth. 2017) (quoting *In re Conservatorship Proceeding in rem by Germantown Conservancy, Inc.*, 995 A.2d 451, 459 n.6 (Pa. Cmwlth. 2010)), *appeal denied*, 191 A.3d 744 (Pa. 2018).

[7] In particular, we note our disapproval of the ad hominem attacks on opposing counsel found in 18th Street's reply brief. These include allegations of past disciplinary action against the Coalition's counsel in unrelated matters and an admonition that "this Court . . . 'consider the source'" of the Coalition's arguments. (18th Street's Reply Br. at 19.) We remind counsel for both parties that zealous advocacy "does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with courtesy and respect." Pa. R.P.C. 1.3 cmt. 1. This consolidated appeal could have benefited from less heat and more light.

[8] Specifically, the "Statement of Questions Involved" section of Isabella's brief sets forth the issues on appeal as follows:

> A. Whether [the Coalition's] November 16, 2018 Application to Quash . . . Isabella's [a]ppeal should be DENIED where [Isabella's] appeal challenged the trial court's denial of [18th Street's] Motion for Reconsideration of the [Approval Order] as well as the order [d]enying [Isabella's] Motion for a Stay[,] an Extension of Time to File Post Trial Submissions and Oral Argument?
>
> B. Whether these consolidated appeals can proceed where the Commonwealth Court has already issued an Order Quashing [18th Street's] appeal challenging the trial court's denial of [18th Street's] Motion to Strike?
>
> C. Whether Act 135, as misapplied by the trial court, violates the separation of powers doctrine because, not only is it a gross departure from the General Assembly's consistent legislation protecting the rights of property owners but, as applied, it also goes against legislative intent plainly expressed in the 2014 Amendments of Act 135?

6

D. Whether this Conservatorship and all of [the Coalition's] prior conservatorships represents [sic] a repeated abuse and perversion of Act 135 in violation of Legislative Intent where: [the Coalition] has NEVER filed a valid Act 135 Plan in accordance with . . . [Section 6(c)(2)-(3) of Act 135]; and where, prior to the instant litigation, [the Coalition] has NEVER prepared an "Act 135 Final Plan" or even attended a valid "Act 135 Final Plan Hearing" as prescribed in . . . [Section 6(c)(1)(2)(3)(4)(5)(6) or (7) of Act 135]; and whether this perversion amounts to "intrinsic" and "extrinsic" fraud."

E. Whether as a matter of law, the trial court lacks subject matter jurisdiction over . . . these proceedings for failure to strictly comply with . . . [Section 5(a) of Act 135] . . . , which required the court to schedule a hearing within 60 days of the June 3, 2016 filing of the Act 135 Petition in this Case?

F. Whether, as a matter of law, the lack of a Corporate Resolution on the trial court record, renders [the Coalition's] conservatorship [a] nullity where, as a matter of law, David Champagne (President of [the Coalition]) cannot act without an executed corporate resolution on the record and where [the Coalition], an indispensable party to these proceedings, is not properly joined in the action in violation of Pa. R.C.P. [No.] 1032(b)?

(Isabella's Br. at 3-7 (footnotes and citations omitted).) 18th Street's brief sets forth the following additional issues for review:

A. Issues arising out of the [Approval Order] . . . .

3. Whether, as a matter of law, [the Coalition's] failure to have representatives from: the Philadelphia Department of License[s] & Inspections[, (L&I)] the Philadelphia Historical Commission, and, Gar[d]ner[-]Fox & Associates, available to answer questions and address issues of . . . all interested parties, and the trial court, is a material violation of . . . [Section 6(c)(4)-(5) of Act 135] which precluded the approval of [the Coalition's] "final plan?"

4. Whether, as a matter of law, [the Coalition] had the ability to perform its obligations under paragraph "B" of [the Appointment Order] and [Section 6(c)(2)-(3) of Act 135] where, from July 21, 2017[,] until March 4, 2018[,] there were no operative stays

7

or pending appeals? Does Opposition equate to obstruction *vis-a-vis* the 14th Amendment of the United States Constitution?

5. Whether the trial court committed an error of law and abused its discretion in failing to consistently apply the Pennsylvania Superior Court's holding in *G&G [Investors,] LLC v. Phillips Simmons Real Estate Holdings, LLC*, 183 [A.]3d 472 (Pa. Super. 2018) [(*G&G Investors*),] which analyzed and emphasized the Pennsylvania Legislature's intent that the temporal provisions be strictly followed to preclude the arbitrary and capricious violation of fundamental constitutional? [sic]

6. Whether, as a matter of law, Act 135 precludes recognition of "successors-in-interest" as set forth in [the Coalition's] trial and appellate submissions and whether, such preclusion prevented [18th Street] from electing "Conditional Relief" under [Section 5 (f) of Act 135] where [18th Street] was not the owner on June 3, 2016 "as of the filing" of the underlying Act 135 petition?

7. Whether the trial court's irrefutably proven bias, hostility, lack of judicial temperament and outright ignorance of the provisions of Act 135 constitutes reversible error, as a matter of law, where relevant precedential cases, statutory interpretation and Act 135 precluded the trial court's approval of [the Coalition's] flawed and incomplete "final plan?"

. . . .

B. Issues arising out of the [Termination Order] . . . .

1. Whether the trial court's denial of [18th Street's] Motion to Terminate [the Coalition's] Conservatorship is an error of law, a violation of due process and equal protection as well as state and federal constitutional law where:

(a) the trial court denied the said motion "out of hand" and failed to hold a hearing on irrefutable evidence that the "Final Plan" being executed by [the Coalition] was not the plan presented to the parties and approved by [the Approval Order]; and

(b) where, just days after obtaining the trial court [sic] approval of its "Final Plan," [the Coalition] was issued a STOP WORK ORDER and forced to submit a modified plan to the Philadelphia Historical Commission in order to obtain

8

address those issues because they are not properly before this Court. The only issues Appellants preserved for appeal relate to whether the trial court violated provisions of the Act in issuing the Approval Order and whether the Coalition's alleged actions warrant termination of the conservatorship.

## III. DISCUSSION

## A. Motion to Quash

The Coalition filed the Motion to Quash on two bases. First, the Coalition argues that the Approval Order is a nonappealable interlocutory order. In support, the Coalition cites our unreported, single-judge memorandum and order in the 2018 Appeal, in which we held that the trial court's denial of 18th Street's motion to strike the Appointment Order was not an interlocutory order appealable

---

valid permits correlating to the . . . estimates that were improperly admitted into evidence and approved by the trial court; and where

(c) the trial court failed to recognize the requirement that [the Coalition] file an Annual Status Report as explicitly set forth in . . . [Section 6(d)(5) of Act 135]; and

(d) where the trial court failed to comply with prevailing case law precluding rendering decisions where recusal motions are pending; and where

(e) . . . [Section 6(c)(7) of Act 135] explicitly states that amendment to the plan requires a completely new hearing date within 60 days?

2. Whether Act 135 is unconstitutional as applied by the trial court *vis-a-vis* the "separation of powers" doctrine and the requirement of a fair and impartial tribunal where the trial court has tampered with the "strict" legislative temporal guidelines of Act 135 and where the trial court has repeatedly, arbitrarily and capriciously applied and[/]or ignored mandatory provisions of Act 135 with impunity?

(18th Street's Br. at 8-11.)

9

as of right. *See* 2018 Appeal, slip op. at 4-5. Second, the Coalition emphasizes that the Appointment Order is not before this Court in the instant appeal and that Isabella has preserved no issues for appeal because she is essentially challenging only the Appointment Order. In response, Isabella argues that we must deny the Motion to Quash because, by our order filed April 4, 2019, docketed at *Walsh v. Isabella*, 12 C.D. 2019 (Denial Order), we denied the Coalition's motion to quash 18th Street's appeal of the same order (*i.e.*, the Approval Order). Isabella points out that, in the Denial Order, we determined that the Approval Order is an interlocutory order appealable as of right pursuant to Pa. R.A.P. 311(a)(2).

We agree with Isabella that our Denial Order has already settled the issue of the appealability of the Approval Order, as raised here by the Coalition. Because we refused to quash 18th Street's appeal from the Approval Order—the same order Isabella now challenges—we will deny the instant Motion to Quash on the same basis. Moreover, although the Coalition is correct that some of the arguments Isabella raises in this appeal challenge only the Appointment Order, we will not address those arguments. Instead, we will address and resolve only those issues Appellants have preserved for appeal as to the Approval Order and the Termination Order. We will, therefore, deny the Motion to Quash.

## B. Challenges to the Approval Order

Appellants generally contend that the trial court erred in approving the Plan because both the Plan itself and the procedures under which the trial court approved it fail to comply with the Act's requirements. The requirements on which Appellants rely are found in Section 6(c) of the Act, 68 P.S. §1106(c), which provides, in relevant part:

10

**(c) Hearing on conservator's final plan for abatement.—**

(1) At the time the court appoints a conservator, the conservator may present and the court may approve the final plan for abatement. If no plan is presented at that hearing, a hearing date on the conservator's final plan for abatement shall be set within 120 days of the appointment.

(2) Thirty days prior to the date of the hearing, the conservator shall submit the plan to the court and to all parties to the action.

(3) The plan shall include a cost estimate, a financing plan and either a description of the work to be done for the rehabilitation of the building or, if rehabilitation is not feasible, a proposal for the closing, sealing or demolition of the building.

(4) The plan shall conform with all existing municipal codes, duly adopted plans for the area and historic preservation requirements.

(5) At the time of the hearing, all parties shall be allowed to comment on the plan, and the court shall take all comments into consideration when assessing the feasibility of the plan and the proposed financing. In making its assessment, the court shall give reasonable regard to the conservator's determination of the scope and necessity of work to be done for the rehabilitation or demolition of the building in approving the final plan and in approving the costs of conservatorship and sale of the property.

(6) Within 15 days of the hearing, the court shall issue a decision approving the plan or requiring that the plan be amended.

(7) If the court decision requires that the plan be amended, a hearing date shall be set within 60 days from the date of the decision.

Appellants first argue that the Plan is invalid under the Act because, they assert, the Coalition did not provide the Plan to the trial court and other parties at least 30 days before the August 22, 2018 hearing as required by Section 6(c)(2) of

11

the Act. Appellants argue that the temporal requirement in Section 6(c)(2) is mandatory, not directory. In response, the Coalition argues that the "final plan for abatement" required by the Act is not a single document but a comprehensive scheme for remediation. The Coalition emphasizes that, on July 13, 2018—more than 30 days before the August 22, 2018 hearing, as required by the Act—it filed a motion for approval of the Plan, with supporting documents that satisfy the Act's requirements for a final plan, thus satisfying the requirements for a cost estimate and financing plan under Section 6(c)(3) of the Act. The Coalition admits, however, that the cost estimate prepared by engineering firm Gardner-Fox & Associates, Inc. (Gardner-Fox) and the statement that the remediation work would be self-financed were provided to the trial court only "[29] days before the scheduled hearing" in the filing supplementing the Coalition's July 13, 2018 submission. (Coalition's Br. at 36.) In response to Appellants' contention that the cost estimate in particular was not timely provided, the Coalition essentially argues that Appellants waived that argument by failing to object or argue before the trial court that Appellants were prejudiced by the untimeliness.

"Whether a statute is mandatory or directory must be determined by considering legislative intent gleaned from review of the entire statute and from considering the nature and object of the statute and the consequences of the construction of it one way or the other." *W. Penn Power Co. v. Pa. Pub. Util. Comm'n*, 521 A.2d 75, 78 (Pa. Cmwlth. 1987). When a statute directs that proceedings occur on a certain timeframe, those timeframes are directory unless the need for timeliness goes to "the essence of the thing required" to be performed under the statute. *Id.* In other words, unless compliance with the statutory temporal requirement is necessary to protect important statutory interests of participants in the

12

proceedings, the temporal requirement is directory, not mandatory. *See id.* (citing *Pa. R. Co. v. Bd. of Revision of Taxes*, 93 A.2d 679, 682 (Pa. 1953) ("It is not necessary . . . that [the temporal requirement at issue] be interpreted as mandatory so long as the rights of property owners to protest their assessments and to appeal therefrom are respected.")). Failure to follow a mandatory temporal requirement renders the proceedings void, whereas failure to follow a directory timeline does not. *Id.*

In general, a filing's untimeliness does not render the filing ineffective or the proceedings void where the opposing party is not prejudiced by the delay. Pleadings, which must be filed within 20 days of the preceding pleading under Pa. R.C.P. No. 1026(a), "may be [untimely] filed *if the opposite party is not prejudiced* and justice requires." *Fisher v. Hill*, 81 A.2d 860, 863 (Pa. 1951). It is improper for a court to strike a pleading when no party "has even suggested that [it] was prejudiced in any way by [a] brief delay in filing." *Allison v. Merris*, 493 A.2d 738, 740 (Pa. Super. 1985). Similarly, a trial court has the discretion to consider an untimely post-trial motion if the untimeliness "does not affect the parties' substantial rights." *King v. Riverwatch Condo. Owners Ass'n*, 27 A.3d 276, 278 (Pa. Cmwlth. 2011), *appeal denied*, 50 A.3d 693 (Pa. 2012). Even "if objections are lodged, . . . the trial court may still, in its discretion, elect to entertain the motion . . . but must first consider whether the objecting party would be prejudiced by the court's ruling." *Carlos R. Leffler, Inc. v. Hutter*, 696 A.2d 157, 166 (Pa. Super. 1997) (holding that trial court should have considered merits of post-trial motion filed one day late because untimeliness did not "upset effective court procedure or prejudice[ ] the . . . parties").

13

Here, on July 13, 2018, the Coalition filed with the trial court and served on Appellants the motion requesting a hearing on approval of the Plan. (R.R. Vol. V at 2832a, Vol. VI at 2861a.) The Coalition attached to that motion an architectural plan titled "Act 135 Final Plan for Blight Abatement & Exterior Stabilization," consisting of two sheets. (R.R. Vol. V at 2859a-60a.) The motion did not contain any other elements of the Plan as required under Section 6(c)(3) of the Act. In its July 19, 2018 order scheduling the August 22, 2018 hearing, the trial court directed the Coalition to submit the required elements of a final plan under Act 135 to the trial court and the parties 30 days before the hearing. (R.R. Vol. VI at 2863a-64a.) On July 24, 2018—29 days before the scheduled hearing—the Coalition filed with the trial court and served on Appellants the document entitled "Conservator's Final Plan." (*Id.* at 2866a.) In that filing, responding to the specific statutory requirements the trial court identified in its July 19, 2018 order, the Coalition averred that it "will self-finance the work required to complete [the Plan]" and attached the cost estimate for that work prepared by Gardner-Fox. (*Id.* at 2867a.)

Turning to the merits of Appellants' untimeliness argument,[9] we agree that at least some of the final plan components required under Section 6(c)(3) of the Act— *i.e.*, the financing plan and the cost estimate—were submitted to the court and the parties one day later than required under Section 6(c)(2) of the Act. We disagree, however, with Appellants' contention that this one-day delay should preclude

[9] We disagree with the Coalition's contention that Appellants waived their argument concerning Section 6(c)(2) of the Act by failing to object before the trial court. Appellants did not raise this issue in their numerous filings after July 24, 2018, and before the August 22, 2018 hearing. (R.R. Vol. VI at 2963a-85a, 3095a-128a.) At the hearing, however, counsel for 18th Street raised the issue of whether "the [P]lan of [the Coalition] is not timely." (R.R. Vol. XVI at 9180a.) The trial court acknowledged at the hearing that one of the issues before it concerned whether the Coalition had acted timely under the Act. (*Id.* at 9125a, 9179a.)

14

consideration of the Plan or void the Approval Order. First, although no court has specifically addressed whether the 30-day requirement in Section 6(c)(2) is mandatory, it does not appear to go to the essence of what Section 6(c) is intended to accomplish—*i.e.*, a hearing on and approval of the Plan. The 30-day requirement simply provides parties and the trial court an opportunity to review the Plan prior to the hearing. We need not construe the temporal requirement as mandatory to afford parties that opportunity because they may request a continuance of the hearing where their review of the proposed final plan is materially delayed by a conservator's untimeliness. Accordingly, we hold that the 30-day requirement in Section 6(c)(2) is directory, not mandatory, and the Coalition's failure to comply with that requirement does not void the proceedings below. *See W. Penn Power Co.*, 521 A.2d at 78. Moreover, Appellants have not asserted—either below or on appeal—that the one-day delay prejudiced them in any manner. It was not, therefore, error for the trial court to proceed with the hearing and issue the Approval Order despite the Coalition's technical noncompliance, by one day, with the temporal requirement in Section 6(c)(2).

Second, Appellants argue that the Plan is substantively deficient—and, thus, invalid—because it lacks a cost estimate and a financing plan as required by Section 6(c)(3) of the Act. As part of this argument, Appellants assert that the Plan contains no "financing plan" as required by that section. They also argue that, because the cost estimate prepared by Gardner-Fox was not submitted at least 30 days before the hearing as required by the Act, it should not have been considered for purposes of the requirement for a cost estimate under Section 6(c)(3). In response, the Coalition argues that it need not include a financing plan pursuant to Section 6(c)(3) of the Act beyond its statement that its remediation work will be

15

self-financed. Regarding the trial court's consideration of the untimely filed cost estimate, the Coalition argues that, despite Appellants' insistence to the contrary, Section 6(c)(2) of the Act does not purport to address the admissibility of evidence at all. The Coalition adds that Appellants have not identified or challenged any specific evidentiary ruling of the trial court.

Section 6(c)(3) of the Act simply lists the elements that must be included within a final plan, including "a cost estimate" and "a financing plan." Neither that section nor any other part of the Act sets forth any specific requirements concerning the materials that may satisfy those elements of the final plan. First, we find no authority—and Appellants cite none—requiring the financing plan to be in any certain form. Simply put, we see no reason why the Coalition's representation that it will self-finance the remediation work is insufficient to satisfy the "financing plan" requirement in Section 6(c)(3). Concerning the cost estimate, Appellants do not argue that the estimate itself is substantively deficient—only that the trial court erred in considering it because it was untimely. As we have discussed, however, the technical untimeliness of that filing has no bearing on the validity of the proceedings below. Accordingly, we find no merit in Appellants' contention that the substance of the Plan falls short of the elements required by Section 6(c)(3).

Third, 18th Street argues that representatives of the Philadelphia Historical Commission, Gardner-Fox, and L&I were not present at the hearing on the Plan, and that their absence violates Section 6(c)(4)-(5) of the Act. 18th Street claims that Section 6(c)(4)-(5) required those representatives to be present at the hearing for cross-examination by Appellants because they were involved in the preparation of the Plan. In response, the Coalition argues that Section 6(c)(4)-(5) imposes no obligation on it or the trial court to ensure the presence of witnesses for

16

cross-examination. The Coalition also points out that 18th Street was free to call its own witnesses for questioning at the hearing.

We agree with the Coalition. Section 6(c)(5) of the Act—on which 18th Street appears to rely—simply provides that "all parties shall be *allowed* to comment on the plan" at the hearing. (Emphasis added.) The provision pertains to "parties," a legal term of art not defined in the Act that typically refers to participants in litigation. Section 3 of the Act, 68 P.S. § 1103, defines "part[ies] in interest,"[10] however, and that definition would not appear to apply to Gardner-Fox or L&I. Thus, the term "parties" does not seem to describe the entities 18th Street identifies, which are not involved in the litigation of this matter. Regardless, Section 6(c)(5) contains no express or implicit *requirement* for any certain person or entity to appear at the hearing. To the extent 18th Street desired the participation of certain entities, nothing prevented 18th Street from calling representatives of such entities as witnesses (by subpoena, if necessary) at the hearing. Accordingly, the failure of the trial court to require those entities to appear or participate was not error and does not undermine the hearing's compliance with the Act.

---

[10] Section 3 of the Act defines "party in interest," in relevant part, as follows:

> A person or entity who has a direct and immediate interest in a residential, commercial or industrial building, including:
>
> (1) The owner.
>
> (2) A lienholder and other secured creditor of the owner.
>
> (3) A resident or business owner within 2,000 feet of the building.
>
> (4) A nonprofit corporation, including a redevelopment authority . . . .
>
> (5) A municipality or school district in which the building is located.

17

## C. Challenges to the Termination Order

18th Street next essentially contends that the trial court either erred or abused its discretion when it denied the Second Termination Petition. 18th Street claims that it filed the Second Termination Petition based on its belief that the Coalition is proceeding pursuant to a revised plan that differs from the Plan, which 18th Street characterizes as a "new plan." (18th Street's Br. at 64.) In the Second Termination Petition, 18th Street made many general allegations of wrongdoing on the part of the Coalition and the trial court, most of which are not germane to whether the Coalition is implementing the Plan as it was approved. The only relevant allegation in the Second Termination Petition is that the Coalition was undertaking excavation work on the Property not provided for in the Plan. (R.R. Vol. XIII at 7438a.) In 18th Street's view, that work amounts to the Coalition's failure to implement the Plan. Based on these assertions, 18th Street argues that the trial court erred in two specific respects: (1) in dismissing the Second Termination Petition despite evidence of the Coalition's deviation from the Plan, and (2) in refusing to hold a status hearing, which 18th Street claims was required under the Act.[11]

In response, the Coalition contends that Act 135 confers broad authority on the conservator to pursue the remediation identified and described in the Plan without the need to hold new hearings each time a minor design modification is

---

[11] It is not entirely clear upon which statutory provision 18th Street relies for this contention. The Act contains no Section "6(d)(5)," the only section to which 18th Street expressly refers. (18th Street's Br. at 65.) Section 6(c)(5) of the Act discusses the conduct of the hearing required for approval of a final plan, which the trial court held on August 22, 2018. Section 6(c)(7) of the Act contemplates another hearing, but only if the *Approval Order* had required amendment of the Plan (which it did not), not if the Coalition's *actions* as conservator require modification of particular aspects of the Plan. No section of the Act requires any hearing on the status of ongoing remediation work pursuant to an approved final plan. Accordingly, we find no merit in 18th Street's claim that the trial court failed to hold a required status hearing, and we will not address that argument further.

required. Specifically, the Coalition explains that the alleged "deviation" 18th Street raised below was simply the addition of detail to a plan showing the footer of a rear wall that was approved as part of the Plan. The Coalition emphasizes its earlier argument that the Plan, as approved, is not a single, static document, and argues that the Act does not empower 18th Street to micromanage the Coalition's discharge of its duties as conservator. As to 18th Street's allegation that the trial court disregarded evidence offered in support of its Second Termination Petition, the Coalition argues that the record only shows that it is fulfilling its mandate under the Act and the Plan to remediate conditions on the Property. Finally, the Coalition argues that 18th Street's second petition to terminate does not satisfy any of the four grounds for termination articulated in Section 10 of the Act, 68 P.S. § 1110. Based on these arguments, the Coalition claims that the trial court did not err or abuse its discretion in issuing the Termination Order.

We begin with a review of the procedures for terminating a conservatorship under Act 135. Section 10 of the Act provides:

> Upon request of a party in interest or the conservator, the court may order the termination of the conservatorship if it determines:
>
> (1) the conditions that were the grounds for the petition and all other code violations have been abated or corrected, the obligations, expenses and improvements of the conservatorship, including all fees and expenses of the conservator, have been fully paid or provided for and the purposes of the conservatorship have been fulfilled;
>
> (2) the owner, mortgagee or lienholder has requested the conservatorship be terminated and has provided adequate assurances to the court that the conditions that constituted grounds for the petition will be promptly abated, all obligations, expenses and improvements of

19

the conservatorship, including all fees and expenses of the conservator, have been fully paid or provided for and the purposes of the conservatorship have been fulfilled;

(3) the building has been sold by the conservator and the proceeds distributed in accordance with [S]ection 9(d) [of the Act, 68 P.S. § 1109(d)]; or

(4) the conservator has been unable, after diligent effort, to present a plan that could be approved under [S]ection 6(b)(3) [of the Act, 68 P.S. § 1106(b)(3),] or to implement a previously approved plan or, for any reason, the purposes of the conservatorship cannot be fulfilled.

The Second Termination Petition did not specifically identify any of the foregoing provisions. 18th Street clarifies on appeal, however, that it meant to invoke Section 10(4) of the Act, and argues that the Coalition has failed to implement the Plan. (18th Street's Br. at 32-33 n.21; 18th Street's Reply Br. at 25.)

The Coalition represented on the record at the August 22, 2018 hearing that rebuilding the rear wall of the Building is a critical part of its work as conservator. (R.R. Vol. XVII at 9297a-98a.) The second sheet of the architectural plans that are part of the Plan pertains to construction of the new rear wall. (*Id.* at 9299a.) Although that sheet does not appear to depict excavation at the site where the rear wall is to be rebuilt, it does depict construction of the wall itself. (R.R. Vol. VI at 2875a.) The building permit for the Property—which 18th Street attached as an exhibit to its motion to terminate—contains plans showing the contemplated rear wall in greater detail than is shown on the architectural drawings in the Plan. (*See* R.R. Vol. XIII at 7461a-68a.) 18th Street also attached photographs showing minor excavation being performed on the Property adjacent to the Building. (*See* R.R. Vol. XIV at 7470a-72a.)

The trial court, in denying 18th Street's motion to terminate, concluded that these documents show the Coalition's continuing efforts to implement the Plan, not

20

its failure to do so. (*See* R.R. Vol. XVI at 8943a.) We agree with the trial court's assessment, and its conclusion is supported by the materials 18th Street submitted with its motion. Both the L&I permit and the relevant photographs show progress toward construction of the rear wall of the Building—an integral part of the work to be performed under the Plan. The fact that the work is shown in greater detail and/or includes excavation not expressly depicted in the Plan is not tantamount to a failure to implement the Plan, as is required to terminate a conservatorship under Section 10(4) of the Act.

Additionally, and just as in *Walsh I*, this Court agrees with the Coalition that 18th Street failed to take advantage of the statutory process afforded to an owner of property that seeks to remediate a blighted property *sans* conservator. *See Walsh I*, slip op. at 11. Section 10(2) of the Act allows an owner of property to abate blighted conditions if it "provide[s] adequate assurances to the [trial] court that the conditions that constituted grounds for the petition will be promptly abated," and pays "all fees and expenses of the conservator." Instead of proceeding under Section 10(2) and presenting the necessary evidence to achieve termination of the conservatorship, 18th Street merely makes bald assertions that it "has always stood ready" to end the Coalition's conservatorship under Section 10(4). (18th Street's Reply Br. at 26.) In short, 18th Street did not pursue the proper statutory procedure by showing that it would *independently* rehabilitate the Property in lieu of the conservatorship it sought to terminate.

Finally, as the trial court pointed out, although the materials 18th Street submitted do not show any true deviation from the Plan, any such deviation would properly be addressed after the remediation work is complete. Based on the

21

conservator's accounting filed under Section 6(d) of the Act,[12] the trial court could restrict cost reimbursement under Section 9(d)(5) of the Act[13] if the conservator performs work not contemplated in the Plan. By contrast, the Act reserves termination of the conservatorship as a remedy of last resort for, *inter alia*, a conservator's *inability* to implement an approved plan despite diligent effort. As we have discussed, the materials 18th Street submitted demonstrate no such inability. For the foregoing reasons, the trial court did not err or abuse its discretion in refusing to terminate the Coalition's conservatorship.

## IV. CONCLUSION

For the reasons discussed above, we will deny the Motion to Quash. On the merits, we conclude that the trial court did not err in issuing the Approval Order. We further conclude that the trial court did not err or abuse its discretion in issuing the Termination Order. Accordingly, we will affirm the orders of the trial court.

_____

P. KEVIN BROBSON, Judge

---

[12] Section 6(d) of the Act, 68 P.S. § 1106(d), provides that "[u]pon the implementation of the final plan approved by the court, the conservator shall file with the court a full accounting of all income and expenditures during the period of time it took to implement the final plan."

[13] Section 9(d)(5) of the Act, 68 P.S. § 1109(d)(5), allows the conservator of a property to recover, *inter alia*, the "costs of rehabilitation" from any proceeds of a sale of the property.

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Community     :
Development Coalition,     :
Laura Blau, and Charles J.     :
Walsh, III     :
    :
          v.     :   No. 11 C.D. 2019
    :
Teresa F. Isabella and     :
325 S. 18th Street, LLC     :
    :
Appeal of: Teresa F. Isabella     :
    :
    :
Charles J. Walsh, III and     :
Laura Blau and Philadelphia     :
Community Development     :
Coalition     :
    :
          v.     :   No. 12 C.D. 2019
    :
Teresa F. Isabella and     :
325 S. 18th Street, LLC     :
    :
Appeal of: 325 S. 18th Street, LLC     :
    :
    :
Charles J. Walsh, III and     :
Laura Blau and Philadelphia     :
Community Development     :
Coalition, Inc.     :
    :   No. 268 C.D. 2019
Teresa F. Isabella and     :
325 S. 18th Street, LLC     :
    :
Appeal of: 325 S. 18th Street, LLC     :

## **O R D E R**

AND NOW, this 28th day of August, 2020, the motion to quash filed by the Philadelphia Community Development Coalition is DENIED. The orders of the Court of Common Pleas of Philadelphia County, dated September 22, 2018, and February 6, 2019, are AFFIRMED.

 

 

_____
P. KEVIN BROBSON, Judge